UNITED STATES v. SMITH.[1]

*(District Court, W. D. North Carolina. April 5, 1886.)*

INTERNAL REVENUE — VIOLATION OF LAWS — WILLFUL REMOVAL OF SPIRITS — INTENT.

In an indictment under Rev. St. § 3296, for the removal and concealment of spirits, where defendant pleaded that the spirits had been removed from the designated place of deposit to an adjoining smoke-room, with purpose of preventing waste from leakage, and not with the intent of defrauding the government, the jury are justified in acquitting, if they find that the act of removal was not willful, in the sense not only of voluntary, but also with a bad purpose.

This was an indictment, tried at April term, 1886, of the district court of the United States, Western district of North Carolina, at Greensboro, North Carolina, Hon. ROBERT P. DICK, D. J., presiding. The defendant was charged in two counts in a bill under section 3296, Rev. St. In the first count, after formal parts: "The said Frederick Smith, late of said district, laborer, did unlawfully and willfully remove one cask of distilled spirits, on which the tax had not been paid as required by law, to a place other than a distillery warehouse provided by law, contrary to the form," etc. And in the second count, after formal parts: "The said Frederick Smith, late of said district, laborer, did unlawfully and willfully conceal one cask of distilled spirits, removed to a place other than a distillery warehouse provided by law, and on which the tax had not been paid, contrary to the form," etc. The defendant pleaded not guilty, and a jury trial was had.

It appeared in the evidence that the defendant was a registered distiller of brandy from fruit, in the Fifth collection district of North Carolina; that about the first of December, 1885, an internal revenue agent (Kellogg) accompanied by a deputy collector, visited defendant's place of business, and examined his distillery book, Form 25½, and also his designated place of deposit, and there were not enough spirits in the place of deposit to fulfill the *quantum* shown by the book to have been distilled. The agent asked defendant where the balance of his brandy was, and defendant replied, pointing to a small out-house, "In there." Thereupon the officers examined the outhouse, and found therein three unstamped packages, containing 150 gallons of brandy. It was further in evidence that the said outhouse was built of logs, was undaubed, and that its contents were exposed to view from the outside; that the same stood about 11 feet from the legal place of deposit; that defendant had before this used it for depositing some of his brandy when the regular place was full, or when it became necessary to prevent waste or

[1] Reported by James E. Boyd, (late U. S. Atty. for Western district of North Carolina,) of the Greensboro, N. C., bar.

leakage, and that this had been done with the knowledge and consent of the internal revenue officers; that the designated place of deposit at the time referred to in December, 1885, was about full; and defendant testified that he had removed the three packages therefrom, and placed them in the outhouse for safe-keeping, and in order that he might have convenient access to the packages left in the place of deposit, and prevent leakage, etc.

The following authorities were cited and commented upon in the argument of the case: *State* v. *Gilbert*, 87 N. C. 527; *State* v. *Whitener*, 93 N. C. 590; *State* v. *Harrison*, Id. 605; *Felton* v. *U. S.*, 96 U. S. 699; *State* v. *Barbee*, 92 N. C. 820; *U. S.* v. *Kirby*, 7 Wall. 482; *Lilienthal's Tobacco* v. *U. S.*, 97 U. S. 237; *State* v. *King*, 86 N. C. 603; *U. S.* v. *Ulrici*, 12 Myers, Fed. Dec. 666; *U. S.* v. *Three Railroad Cars*, Id. 562.

*H. C. Jones*, U. S. Atty., for the United States.

*James E. Boyd*, for defendant.

After the close of the argument, his honor, Judge Dick, delivered the following charge to the jury:

*Gentlemen of the Jury:*

When the testimony was closed in this case, I requested the counsel to make as careful an examination of legal authorities as they could during the recess of the court, and submit to me arguments upon the questions of law involved. You have heard the legal arguments, and also arguments upon the matters of fact presented by the evidence, and you are now prepared to receive the instructions of the court upon the material questions of law so fully discussed.

I will not recapitulate the testimony, as there is not much conflict, but leave all questions of fact entirely to your determination. The law is a system composed of maxims, rules, and principles which have been devised and adopted for the purpose of securing and regulating business transactions, social relations, and political order among men. The elements of the law are founded in reason and natural justice, and are the outgrowth of human experience, knowledge, and wisdom, developed in the course of ages. It has been well said that "the reason of the law is the life of the law." Justice is the spirit of the law, and Christian civilization has adorned it with many principles of humanity and benevolence.

I will briefly consider and explain some of the familiar general rules of the law which have been referred to in the course of the argument of counsel.

In all trials for crime the prosecution must prove, beyond a reasonable doubt, the truth of every fact essential, in point of law, to constitute the offense charged in the indictment. This rule has long existed, and is founded in natural justice and humanity; as all good and just men feel that, when such a doubt exists, it is better for the welfare of society to acquit than to condemn. Every person accused

of crime in a court of justice is presumed in law to be innocent until the accusation is proved, to the satisfaction of an impartial jury, beyond a reasonable doubt. The law imputes innocence and honesty, rather than wrong and fraud, in the conduct of men; and affords the benefit of such presumption to every person accused of crime or fraud until the contrary is satisfactorily proved by the accuser. "It is a principle of natural justice, and of our law, that the intention and the act must both concur to constitute crime." There can be no crime when there is no criminal intention. An act does not make the actor guilty unless his intent was criminal. This wise, just, and reasonable rule is firmly settled in the common law; is widely known and approved among men; and is recognized and observed in every enlightened system of jurisprudence.

When a criminal act is knowingly and *willfully* committed, the law presumes a criminal intent, and the offender is responsible for all the natural and probable consequences which ensue from the unlawful act, although such results were not contemplated. No person can be excused from the *willful* commission of an unlawful act upon the ground that he was ignorant of the law that he had violated. Every person of ordinary discretion is presumed to know the law of the country in which he resides. The strict application of this legal presumption is necessary to secure the peace and good order of society, and it is not unreasonable when applied to crimes at the common law, which are generally *mala in se,*—wrong in themselves; for the consciences of men teach them the natural principles of social obligation and duty. Social and political necessity and experience have induced legislatures to enact statutes imposing more stringent duties and obligations upon citizens than were known to the common law. Whenever a statute positively forbids an act, the doing of such act *willfully,* or from culpable negligence, is an indictable crime. A *willful* act is one that is done, not only voluntarily, but for a bad purpose. When such purpose is shown by the evidence, the law implies a criminal intent. The accused cannot say, by way of defense, that he did not know the law, and did not intend to violate it. When an act forbidden by law is knowingly done, but not with a bad purpose, the presumption of criminal intent is only *prima facie,* and the accused may show that he did not act from an evil motive, and may claim the benefit of the presumption of innocence and the doctrine of a reasonable doubt.

It is often said that the presumption of "legal knowledge" is a positive rule of law, and applies to all cases where acts are knowingly done which are expressly forbidden by law, and gives rise to a *conclusive* presumption of criminal intent. If the word "conclusive," in this connection, means "irrebuttable," then such presumption is very unreasonable when applied to all criminal charges, and is not justified to that extent of meaning by any considerations of public policy. No man knows all the law. Judges differ in their legal decisions, and

lawyers are continually discussing in the courts doubtful and controverted questions of law. Long years of study and practice enable men to acquire considerable legal learning, but their knowledge of the law is by no means universal. The law is a growing science, and is continually expanding to meet the wants and necessities of a rapidly advancing civilization. Legislatures are frequently changing the common and statute law by new statutes, which often require judicial interpretation and construction. Prudent lawyers, in trying cases involving important questions of law, diligently and laboriously seek for and examine authorities, and judges are always pleased to hear carefully prepared arguments before they deliver maturely considered opinions deciding cases before them.

The presumption of "legal knowledge" is a general rule, and not accurately defined as to the extent of its application. I do not regard it as a positive rule of law, but as a very strong presumption, subject to some reasonable qualifications in criminal trials, where the life and liberty of the citizen are involved. In such cases the law should be liberally construed, so as to give effect to all of its beneficent provisions, to avoid conflict of rules of law, and secure the citizen against anything that would be unjust or oppressive. The beneficent presumption of innocence, and the doctrine of a reasonable doubt,—so important in the trial by jury,—would be of little benefit to a person on trial for crime, if the mere proof of an unlawful act knowingly committed by him was received in a court of justice as conclusive evidence of guilt. He would be convicted without any opportunity of explanation and defense, and without any of the benefits of a trial by jury, secured by the constitution of the United States. A trial by jury, in some instances, would be a mockery of justice, if a person accused should be convicted by a *conclusive* presumption of law. It is well settled that a *prima facie* case made by the prosecution does not take away the presumption of innocence from the accused, or deprive him of the benefit of a reasonable doubt in the minds of the jury.

In civil matters there are many irrebuttable presumptions, and there are some as to the incapacity of persons for committing crime. In some text-books and judicial decisions the doctrine is broadly stated that a presumption of knowledge of the law is in all cases irrebuttable, and conclusively establishes a criminal intent. This extreme extension of the rule is unreasonable, and, as to criminal intent, should be restricted to cases where the inference of criminal intent *necessarily* arises from the facts in evidence, and should not extend to offenses where a particular and specific intention is essential to constitute the crime charged.

As a general rule, I think the legal effect of presumptions as to criminal intent is to throw upon the accused the *onus* of justifying or explaining the acts from which the law infers a criminal intent. It is a rule founded in natural justice, and as old as the law,—both hu-

man and divine,—that no person shall be condemned without being heard in explanation of his conduct. Presumptions could never have been adopted as a means of proof before a jury if their nature and force could not be estimated by men of plain and ordinary sense and discretion. On this subject, I think the rule of law stated by a very eminent English judge is reasonable, and generally applicable:

"When an act, in itself indifferent, if done with a particular intent, becomes criminal, then the intent must be proved and found by the jury; but where the act is in itself *unlawful*, the proof of justification or excuse lies on the defendant, and in failure thereof the law implies a criminal intent."

In trials for crime, I think, the rule of law that a criminal intent must concur with an unlawful act in order to constitute crime is one of the fundamental principles of public justice, almost universal in its application. When an act in itself unlawful is proved to be knowingly done, no further proof is necessary on the part of the prosecution to obtain a conviction, as the law presumes the criminal intent, but it is not so conclusively presumed as not to admit of an explanation. If an act forbidden by law is knowingly and *willfully* done, and the accused has no other defense except his ignorance of the law, then the presumption of criminal intent is not rebutted.

As a general rule, a man's motives and objects must be inferred from his conduct; and, when his acts are sufficient to indicate a guilty intention, he is entitled to show in evidence the facts and circumstances which preceded the act, or were parts of the transaction,: so that his whole conduct may be passed upon by a jury who are impartial, and conversant in human affairs, and whose common sense and experience enables them to judge of the connection between conduct and intention. Where an act which in itself is innocent, becomes an offense only because it is forbidden by a statute, the spirit and purpose of such statute should be considered, and a person who does the forbidden act ought not to be convicted by a jury unless they are satisfied that he did the act with a purpose to evade the provisions of the statute. The reason and object of the law in such cases should prevail over its letter.

In the section of the statute on which this indictment is founded the words "unlawfully and willfully" are not used in specifying the act forbidden, and, upon a strict construction, the doing of such act is indictable, and the law infers the criminal intent. The indictment would have been sufficient if the language of the statute had been literally used in charging the offense committed; but the defendant would still have had the right to rebut the presumption of a criminal intent implied by law, by evidence of facts and circumstances surrounding the transaction. The defendant must have had the purpose of defrauding the government of its revenue before he can be rightfully convicted of crime. The words "unlawfully and willfully" are used in the indictment in characterizing the offense

charged, and in averring the intent with which the act was committed, and I think that you must be satisfied that the removal of the brandy was "willful" before you find the defendant guilty.

The district attorney insisted that the words "unlawfully and willfully" are the words ordinarily found in the precedents, and, for the sake of conformity, ought to be used in an indictment of this kind, and, in their signification, are equivalent to "unlawfully and on purpose," and are only intended to aver that an unlawful act was done "intentionally." The district attorney asked me to charge you that there is no evidence that the defendant was constrained by any one, or by circumstances, to remove the brandy from the distillery to the smoke-house, and therefore he did the removing purposely. I decline to give the charge requested, and I leave the evidence of the facts and circumstances surrounding the transaction to be considered by you.

As to the signification of the word "willfully," when used in a statute *creating* a criminal offense, our state supreme court, in a recent case, *(State* v. *Whitener,* 93 N. C. 592,) gives a definition of the word substantially like one that is approved by the supreme court of the United States. "The word 'willfully,' in the ordinary sense in which it is used in statutes, means not merely 'voluntarily,' but with a bad purpose." *Felton* v. *U. S.,* 96 U. S. 699.

The defendant in his testimony said that he has been a duly-authorized brandy distiller for nearly 20 years, and that he was advised by a collector of the district, many years ago, that the government did not require him to pay more taxes than those assessed on the registered capacity of his distillery; and that he had acted on this instruction with the knowledge of the revenue officers. It was the duty of the defendant to render an account and pay taxes on all the liquors that he manufactured, and his failure to perform such duty was not justified by the instructions received from the collector, as he acted without legal authority. Individuals, as well as courts, must take notice of the extent of authority conferred by law upon a person acting in an official capacity.

The defendant further testified that he placed the three barrels of brandy in the smoke-house, not with the object of concealing the same, but for the purpose of conveniently reaching them in case of leakage; that his designated place of deposit was small, and crowded with barrels and kegs; that he had often lost brandy from leakage; that the smoke-house was built of logs, and the cracks were open, and the building was only 11 feet distant from the designated place of deposit; and was not adapted for concealment. As a distiller of brandy the defendant was exempted from many of the strict regulations imposed by law on distillers of grain. He was allowed to select his place of deposit, and, when designated, it was under his keeping.

You can consider the testimony of the defendant, together with the evidence as to his conduct and declarations at the time the brandy

was seized by the revenue agent, and all the other facts and circumstances testified to by the government witnesses. If you are satisfied that the barrels of brandy were placed in the smoke-house with the honest purpose of preventing waste from leakage, and not with the intent of defrauding the government, then you would be justified in finding that the act of removal was not *willful*. In making the inquiry as to the object and purpose of the defendant, you should consider the evidence of his good character, and give it such weight as you think it entitled to under the circumstances of the case. If you believe from the evidence that he placed the three barrels of brandy in the smoke-house with the intent of defrauding the government of revenue, then you will find him guilty. But if you are of opinion, after considering all the facts and circumstances surrounding the transaction, that he had no such willful purpose, or you have a reasonable doubt about the matter, then your verdict should be "Not guilty."

The jury, after a short deliberation, returned a verdict of "Not guilty," and the defendant was discharged.

### NOTE BY THE JUDGE.

On the day after the trial of this case the district attorney called my attention to the case of *State* v. *Simpson*, 73 N. C. 269, as an authority sustaining the views which he presented in his argument as to the propriety and necessity of using the words "unlawfully and willfully" in the indictment, and as to the legal signification of such words. Upon these points the case fully sustains his views, and is adverse to my charge to the jury. I think, however, that the case sustains the opinion which I expressed as to the nature, force, and effect of statutes creating offenses, upon the question of criminal intent. The indictment in that case was founded upon a state statute, which in general terms made certain acts a misdemeanor, without saying that such acts must be unlawfully and willfully done to constitute the offense. The indictment in describing the offense used the general words of the statute, and it was held to be defective, because it did not allege that the act was done "unlawfully and willfully." The court says, in substance, that it is apparent, from the nature of things, and the dictates of common sense and natural justice, that the general words of the statute are too broad, and go beyond the meaning of the law-makers; and must be qualified in construction by the use of the words "unlawfully and willfully," or by words of equivalent import. "In our case the indictment does not contain such words as ought to have been used in the statute, if the legislators had correctly expressed therein their precise meaning; and it was necessary for the indictment to aid the want of accuracy by adding the words necessary to express the meaning of the statute, and to qualify the general words used."

Since delivering my charge to the jury in this case, a few days ago, I have carefully considered the section (3296) of the Revised Statutes upon which the indictment was founded, in connection with other sections of the internal revenue laws, and in the light of the common law, and feel that I was justified in inferring that it was the intention of congress to create a criminal offense by such section only when the forbidden act was done with a *willful* purpose to defraud the government of revenue, and such purpose is

an essential element of the offense. The regulations and requirements of the internal revenue laws are very strict and positive, and constitute a complicated system of duties and arrangements, which cannot be easily and accurately comprehended by persons of ordinary intelligence and experience, and mistakes will often be made by persons who undertake to carry on business in conformity with such laws. The penalties and punishments for non-compliance with such laws are very severe, and I cannot suppose that congress intended that a jury should convict any person whom they believed to be innocent of any criminal purpose in doing a forbidden act, and of whose guilt there was any reasonable doubt. Congress has the power to change the principles of the common law by a statute, but I believe that when a material departure from long-established principles of justice is intended, such change will be made in plain and unmistakable words; and a court of justice is not warranted in inferring such intentions from the perhaps inadvertent or accidental omission in a statute of a word or words which at the common law are material in the description of a crime, and which are ordinarily used in statutes creating criminal offenses.