DAILY *v.* BOARD OF COMMISSIONERS OF THE COUNTY OF DAVIESS.

[No. 20,627.   Filed June 6, 1905.]

1. OFFICERS.—*Salary.*—*Statutes.*—*County Board of Review.*—Although, under Acts 1891, p. 199, §112; Acts 1893, p. 183; Acts 1895, p. 207, §1; Acts 1899, p. 430 and Acts 1903, p. 49, §37, the county assessor was entitled to $3 per day "for the time actually employed" not to exceed a designated number of days per year, and under Acts 1895, p. 74, §2, and Acts 1903, p. 49, §28, such assessor was made *ex officio* a member of the county board of review with a salary of $3 per day, for a designated number of days, which were included within the time designated by such former statutes, such county assessor can not recover pay both as county assessor and as member of such board for services performed on days when such board was in session, even though he worked as assessor before and after the hours when such board was actually in session.   p. 101.

2. CONTRACTS.—Quasi.—Assumpsit.—Money Had and Received.—
In an action of assumpsit for money had and received, the law
will not imply a promise to repay unless ex aequo et bono the
defendant ought to refund.  p. 104.

3. SAME.—Quasi.—Recovery of Money Illegally Paid.—"Igno-
rantia Juris non Excusat."—Where the board of commissioners
allows and pays a county officer a sum, as salary, in violation
of the statutes, the maxim, "ignorantia juris non excusat" will
be given a direct application and a recovery of such sum will
be adjudged, public policy requiring the same.  p. 105.

4. COUNTIES.—Officers.—Salaries.—Unlawful Payments.—Unlaw-
ful payments of salary to a county assessor, by the board of
commissioners, are not binding on the county, since no consent
was given, the limits of the agency of the board being prescribed
by statute.  p. 107.

5. CONTRACTS. — Quasi.—Officers.—Salaries.—Recovery.—Statu
quo.—In an action against a county assessor for the recovery of
unlawful salary paid to him by the board of commissioners, it
is no defense that such officer can not be placed in statu quo.
p. 109.

6. COUNTIES.—Council.—Appropriations for Unlawful Purposes.
—The act of 1899 (Acts 1899, p. 343), creating a county council
and providing for appropriations thereby, does not permit the
appropriation of money for any purpose not sanctioned by
statute.  p. 109.

From Daviess Circuit Court; M. S. Hastings, Special
Judge.

Action by the Board of Commissioners of the County
of Daviess against John Daily. From a judgment for
plaintiff, defendant appeals. Transferred from Appellate
Court under §1337u Burns 1901, Acts 1901, p. 590.
Affirmed.

Gardiner, Gardiner & Slimp, for appellant.
William Heffernan and Ezra Mattingly, for appellee.

GILLETT, J.—This case presents the question as to the
right of appellant, a county assessor, to recover, as such, per
diem allowances on account of the performance, during the
year 1903, of services which the statute provides shall be
performed by the county assessor in connection with the
work of the county board of review, it appearing that dur-

ing said time he received pay as a member of said board. The further question is presented as to the liability of appellant, at the suit of the county, for moneys drawn by him as county assessor during the years 1901 and 1902 on account of services rendered during a period of time in excess of 180 days in each year, and of the additional time that he served on the county board of review. The court below solved these questions in favor of appellee.

But a brief statement of some of the facts, which are exhibited in a special finding, is necessary. It was found that during the days of 1903 that the board of review of said county was in session its working hours were from 9 o'clock a. m. to about 4 o'clock p. m., and that during other hours of said days appellant performed the services sued for. As to the claim of the county against appellant, it was found that for the years 1901 and 1902 he filed statements, and received per diem allowances, for amounts aggregating $885 and $879, respectively, under and pursuant to appropriations attempted to be made by the county council, and it further appears that during said two years he was also paid as a member of the county board of review. A proper demand for the return of the money was made.

The question we shall first consider is whether appellant was entitled to an additional per diem for each day while the board of review was in session during the year 1903. From the time of the creation of the office of county assessor to the enactment of the present law, that officer's compensation has been limited to $3 per day "for the time actually employed" in the discharge of the duties of his office. Acts 1891, p. 199, §112; Acts 1893, p. 183; Acts 1895, p. 207, §1; Acts 1899, p. 430; Acts 1903, p. 49, §37. It was held in *Seiler* v. *State, ex rel.* (1903), 160 Ind. 605, and *Tucker* v. *State, ex rel.* (1904), 163 Ind. 403, that under that portion of the act of 1895 (Acts 1895, p. 74, §2) relative to the county board of review the auditor was entitled to the per diem provided

by section one hundred and fourteen of the tax law as amended by said act, and it is insisted by appellant's counsel that, in view of this ruling, the re-enactment of the clause relative to the compensation of members of the county board of review (Acts 1903, p. 49, §28) gives to the county assessor a like allowance, since that officer and the auditor and treasurer were put upon the same footing. We admit that under said act the county assessor was entitled to compensation at the rate of $3 per day as a member of the board of review, but we cannot agree with counsel that while so serving he was also entitled to draw an additional per diem for services performed as county assessor.

Preliminarily, it may be noted that he did not serve for an annual salary, that he was not required to keep an office open while attending upon the board of review, that the services sued for were closely correlated with those of said board, and that the act which created his office provided that he should perform the duties specified in the act, and subsequently made provision for all of his duties as county assessor and as a member of said board.    Acts 1891, p. 199, §112.    While these considerations may not be controlling upon the question as to whether the office of a member of the county board of review is a separate office from that of county assessor, yet they have a bearing upon the question as to whether the General Assembly intended to authorize that officer to split up his day's service, for which he was paid as a member of the board of review, and to authorize an allowance for services performed, at hours when the board was not in session, as county assessor.

In *Board, etc., v. Bromley* (1886), 108 Ind. 158, the question was presented as to whether a township trustee was entitled to a per diem from the county as overseer of the poor during days that he had been paid by the township for his services as township trustee.    In holding that he was not entitled to the extra allowance, this court said:

"We further interpret the section under consideration to mean that, as applicable to both classes of service, an allowance of only $2 can be made for an actual day's service, without reference to the manner in which the day may have been divided between the two classes of service, and that, consequently, a township trustee is not entitled to receive, out of any fund, more than $2 for official services performed during any one day."

The fact that the officer's time is occupied during the major portion of the business day as a member of the board is inconsistent with a claim for services in another capacity which the statute puts on a per diem basis "for the time actually employed." The statement that appellant served during the ordinary business hours of a day in the capacity of a member of the board of review involves the admission that he was not "actually employed" in the discharge of the duties of county assessor on that day. In its last analysis the question before us is this: May appellant recover two days' pay for one day's work, in the performance of services required by statute to be performed by him as an aid to the board, and also for his service as a member thereof, where one of the statutes providing for compensation is based upon pay by the day during the time actually employed? We cannot thus construe the two provisions because of the element of time antagonism. It is our opinion that because of this a legislative purpose to allow compensation to the county assessor for the services sued for, during days that he is employed on the board and drawing pay therefor, can not be implied. Since the General Assembly of 1895 (Acts 1895, p. 207, §1) limited the days of service of the county assessor, the inference is but fair that it gave him compensation as a member of the board of review as a means of giving greater elasticity to the provision for compensation in respect to duties concerning which there was less reason to apprehend that improper claims for compensation would be presented, and for the

further reason that his work upon the board would have to be completed without regard to the number of days that he had acted as county assessor.

Passing to the second question above stated, we find it insisted by counsel for appellant that as the extra services were performed at the instance of the county council, and as the officer cannot now be placed in *statu quo,* this cause ought to be distinguished from *Board, etc., v. Heaston* (1896), 144 Ind. 583, 55 Am. St. 192, which involved the question as to the right of a county to recover moneys allowed to an officer in defiance of an express statute.

It is undoubtedly true, as was suggested in the case of *Board, etc., v. Heaston, supra,* that in an action for money had and received the law will not imply a promise to repay unless *ex aequo et bono* the defendant ought to refund. *Moses* v. *Macferlan* (1760), 2 Burr. 1005; *Bize* v. *Dickason* (1786), 1 T. R. 285; *Brisbane* v. *Dacres* (1813), 5 *Taunt.* *143; *Badeau* v. *United States* (1889), 130 U. S. 439, 9 Sup. Ct. 579, 32 L. Ed. 997; *Lemans* v. *Wiley* (1884), 92 Ind. 436; *McFadden* v. *Wilson* (1884), 96 Ind. 253; *Lockwood* v. *Kelsea* (1860), 41 N. H. 185; *Franklin Bank* v. *Raymond* (1829), 3 Wend. 69; *Buel* v. *Boughton* (1846), 2 Denio 91; *Mayer* v. *Mayor* (1875), 63 N. Y. 455; *Carson* v. *M'Farland* (1828), 2 Rawle (Pa.) 118, 19 Am. Dec. 627; *Falconer* v. *Smith* (1851), 18 Pa. St. 130, 55 Am. Dec. 611; *Glenn* v. *Shannon* (1879), 12 S. C. 570; *Goddard* v. *Town of Seymour* (1862), 30 Conn. 394; *Foster* v. *Kirby* (1862), 31 Mo. 496; *Orman* v. *North Alabama, etc., Co.* (1892), 53 Fed. 469; 1 Beach, Contracts, §660; 1 Pomeroy, Eq. Jurisp. (3d ed.), §182; 3 Pomeroy, Eq. Jurisp. (3d ed.), §1047; 1 Chitty, Pleading (16th Am. ed.), 362, note. As said by Professor Keener, Quasi-Contracts, 26, in the opening of his chapter, Recovery of Money Paid under Mistake: "That one is dealing with an equitable doctrine in discussing the sub-

ject-matter of this chapter, is evident from the statement universally accepted that the plaintiff cannot recover, unless it appears that it is against conscience for the defendant to retain that which the plaintiff has paid him." The only difficulty is in the application of the doctrine.

As respects this case, it is first to be considered that by the act of 1895 (Acts 1895, p. 207, §1), which fixed the limit of time for which county assessors might receive compensation, it was expressly provided that the officer "shall not charge for or receive pay for" more than the number of days of service fixed as the maximum by said act. Section 6548 Burns 1901, Acts 1883, p. 48, §7, provides: "It shall be unlawful for any board of commissioners to allow any county, township or other public officer, any sum of money out of a county treasury, except when the statutes confer the clear and unequivocal authority to do so." As the allowances in question were illegal, it is pertinent to consider the attitude of appellant in respect thereto. The maxim is, *"Ignorantia juris non excusat."* This, it will be observed, is not the equivalent of a statement that all persons are presumed, as a matter of fact, to know the law. The maxim is one of public policy, to enable the law to attain its just and proper ends. Keener, Quasi-Contracts, 87-91; 2 Pothier, Obligations (Appendix), 340; *Martindale v. Falkner* (1846), 2 C. B. *706, *719; *Reg. v. Mayor* (1868), L. R. 3 Q. B. 629; *Black v. Ward* (1873), 27 Mich. 191, 15 Am. Rep. 162; *United States v. Smith* (1886), 27 Fed. 854; *Brent v. State* (1869), 43 Ala. 297; 1 Taylor, Evidence (Chamberlayne's note), 183[3]; 1 Elliott, Evidence, §80, note; *Barr v. Chicago, etc., R. Co.* (1894), 10 Ind. App. 433. And see *Cutter v. State* (1873), 36 N. J. L. 125; *Miller v. Procter* (1870), 20 Ohio St. 442. It was said by Campbell, J., speaking for the court in the case of *Black v. Ward, supra:* "But the maxim referred to in regard to a knowledge of the law is misapplied. No man can avoid a liability, as a general

thing, because he is ignorant of the law. This is an essential rule of society. But the law is not so senseless as to make absurd presumptions of fact. In *Reg.* v. *Mayor of Tewkesbury* [1868], L. R. 3 Q. B. 629, this supposed maxim was very clearly explained, and it was held that where an actual knowledge was in question, the legal presumption could not supply it. Blackburn, J., uses this language: 'From the knowledge of the fact that Blizard was mayor and returning officer, was every elector bound to know as matter of law that he was disqualified? I agree that ignorance of the law does not excuse. But I think that in *Martindale* v. *Falkner* [1846], 2 C. B. 706, 719, Maule, J., correctly explains the rule of law. He says: "There is no presumption in this country that every person knows the law; it would be contrary to common sense and reason, if it were so." In *Jones* v. *Randall* [1774], Cowp. 37, 40, Dunning, *arguendo,* says: "The laws of this country are clear, evident, and certain; all the judges know the laws, and knowing them administer justice with uprightness and integrity." But Lord Mansfield, in delivering the judgment of the court, says: "As to the certainty of the law mentioned by Mr. Dunning, it would be very hard upon the profession if the law was so certain that everybody knew it; the misfortune is that it is so uncertain that it costs much money to know what it is even in the last resort." It was a necessary ground of the decision in that case that a party may be ignorant of the law. The rule is that ignorance of the law shall not excuse a man, or relieve him from the consequences of a crime, or from liability upon a contract. There are many cases where the giving up a doubtful point of law has been held to be a good consideration for a promise to pay money.' The learned judge proceeds further to the same effect, and the judgment of the court in that case, as in the one cited from Lord Mansfield, rested upon the sole ground that a

person was not presumed as a matter of fact to know the law relied on to disqualify him as a voter."

We are of opinion, however, where the legislature, for the purpose of safeguarding the treasury and preventing profligacy of expenditure, has made it unlawful for the county assessor to charge or to receive pay for more than a certain number of days; that, notwithstanding the peculiar character of an action on an implied promise, the maxim that ignorance of the law does not excuse should be given a direct application. As said by Professor Keener: "It is evident that public policy requires that ignorance of law shall not excuse the doing of acts which the welfare of society demands shall be prohibited." Keener, Quasi-Contracts, 91. There is something of the same view in *Broome* v. *Beers* (1826), 6 Conn. 198, 212, where it was said concerning the presumed knowledge of a party that a certain deed had priority: "There is nothing in the case to repel the inference of the plaintiff's knowledge, if, on the principles of equity, it ought to be presumed."

It must not be forgotten, in considering the equities of the situation, that the representatives of the county were the agents of the people, and that it was the latter 4. who really constituted the corporation. Such representatives may therefore, in such a case, be said to act for an absent principal, and all parties are charged with a knowledge of the limitation upon the powers of such agents. We cannot put such payments as are here complained of on the basis of ordinary payments made under mistake of law. As said in *Board, etc.,* v. *Heaston* (1896), 144 Ind. 583, 593, 595, 55 Am. St. 192, concerning allowances by boards of commissioners: "In their administrative capacity the commissioners exercise their powers as public or special agents and cannot exceed the authority conferred upon them by law, the latter is the letter of their agency. Within legal limits, or scope of their authority, their action in auditing, determining, and allowing the

amount due to a creditor of the county, in the absence of fraud, or perhaps mistake, binds the latter. But they cannot bind the county by allowing and ordering a claim to be paid, not legally chargeable to it, or the allowance of which is prohibited by statute. They have not unlimited choice as to the objects to which the money of the public shall be applied. *Harney* v. *Indianapolis, etc., R. Co.* [1869], 32 Ind. 244. See, also, *Shirk* v. *Pulaski County* [1877], 4 Dill. 209; *People, ex rel.,* v. *Supervisor* [1866], 14 Mich. 336; *Board, etc.,* v. *Ellis* [1875], 59 N. Y. 620, and cases there cited; 4 Am. and Eng. Ency. Law, 389. * * * It was no payment by the county. The latter, as the principal, had no part in the payment. It could not, as a public corporation, be held to consent to the payment of, or expenditure of, the public money in defiance of law. Awarding to the appellee this money, under the alleged facts, was in a legal sense equivalent to an unlawful appropriation of the county's money to his own use by the aid of its board of commissioners. The allowance and payment of the money being unlawful, the commissioners did not act within the scope of their authority, and therefore did not bind the county."

The legislative enactment of 1895 (Acts 1895, p. 207, §1) stands for the judgment of the lawmaking power that it was unwise to leave the matter of the adjustment of these per diem allowances entirely open, and, if we permit appellant to retain what the board of commissioners unlawfully paid him, we place the county in the same situation as the General Assembly forbade it to be placed in. It was competent for the legislature to determine just how far the county should become indebted for such services, and, as it was made unlawful to pay more, the expenditure by the board was a waste or devastavit, and to this act appellant was a party.

A county is not to be absolved from the obligations of common honesty where it is seeking the return of money

paid under mistake, and we do not assert that the
5. mere fact that a county may have had a technical
defense to a demand will relieve it of the conse-
quences of payment where, in the matter of substance, and
as between man and man, it would be just for the defend-
ant to retain the money. But here we have a case in which
the people, through the lawmaking power, put a check
upon the board of commissioners, by fixing an absolute
maximum, in order that excessive claims for per diem al-
lowances might not be made to appear by testimony before
the board, and in such a case we cannot sanction the view
that the question which the board was excluded from trying
should be submitted for trial in court as one of fact. To·
do so would be to subject the county to the hazard of an
excessive allowance, where but for the commissioners' vio-
lation of law, the controversy could not have arisen. It is
in the transcending of express statutes by a public agency,
coupled with the danger of the county's being made the
sufferer now, were an inquiry as to appellant's services made
(the facts, it being observed, resting largely in the knowl-
edge of the officer), that we find grounds for distinguishing
this case from other· actions where the defendant cannot
be placed in *statu quo.*

We find nothing in the words or the spirit of the act cre-
ating the county council which vests in that body author-
ity to make an appropriation in defiance of express
6. law. The leading purpose of that act, as succinctly
stated in section twenty-nine thereof, was to place
limits and checks upon payments out of the treasury, and
not to extend or increase them. Acts 1899, p. 343.

Judgment affirmed. ·