Filed June 20, 1894.

---

No. 1,300.

### BARR, ADMINISTRATOR, v. THE CHICAGO, ST. LOUIS AND PITTSBURGH RAILROAD COMPANY.

RAILROAD.—*Willful Injury.*—*Special Verdict.*—*Finding of Willfulness Necessary.*—In an action against a railroad company for damages for the alleged willful running down and killing of the plaintiff's decedent, a special verdict which fails to find that the conduct of the defendant's engineer was willful will not support a judgment in favor of the plaintiff.

From the Henry Circuit Court.

*A. Rogers* and *C. S. Hernly,* for appellant.
*J. L. Rupe,* for appellee.

LOTZ, C. J.—The appellant, as the administrator of the estate of one George Harlan, deceased, brought this action against the appellee to recover damages on account of the death of said decedent, alleged to have been caused by the willful conduct of the appellee's servant. The cause was put at issue and tried by a jury, which, at the request of the appellee, returned a special verdict.

The court overruled appellant's motion for judgment on the verdict, and his motion for a new trial; and sustained appellee's motion for judgment on the verdict, and rendered judgment in favor of the appellee.

The appellant excepted to each of these rulings, and has assigned the same as error in this court.

The facts, as found by the special verdict, are substantially as follows:    On the 7th day of February, 1890, the appellee owned and operated a railroad, extending through Henry county, and through the corporate limits of the town of New Castle; that on said day the appellee's fast mail train was approaching the station in said town, at the rate of from fifteen to twenty miles per hour; that when said train was within about one-half mile of said station, the appellant's decedent, George Harlan, entered upon the railroad track at a point between said station and the approaching train; that the distance from the point where the deceased entered upon said track, and the approaching train, was between one-half and one-quarter of a mile;  that at about the time the deceased entered upon the track, one Albert Kendall also entered upon said track; that the point where Kendall entered upon said track was between the deceased and the approaching train; that the said Kendall walked in the direction of the deceased and with his back to said approaching train, and was apparently unconscious of the approaching train; that the engineer on the locomotive attached to said train saw the deceased as soon as he entered upon said track; that the deceased, as soon as he entered upon said track, commenced to walk rapidly in the direction of the train, and to make signals to the engineer by throwing up his arms and hands above his head and waving them in rapid succession, and continued so to do while he walked the distance of about two hundred feet on said track toward said train;  that

the said Albert Kendall only stepped off said track in time to avoid being struck by said train; that the deceased, while walking rapidly and making the signals as aforesaid, approached very near the locomotive of said train, at which time he attempted to step off said track, and while in the act of stepping off, he was struck by the locomotive and killed; that when said train approached to within from eight hundred to twelve hundred feet of the deceased, the engineer distinctly saw the deceased making said motions and signals; that said engineer gave no heed to said signals, except to sound the danger whistle, about the time the engine struck the deceased, and made no effort to stop the train or arrest its motion until after the deceased had been struck by the locomotive; that the deceased left a widow and children dependent upon him.

There was no finding that the conduct of the engineer was willful.

A judgment is the sentence of the law pronounced by the court upon the matters contained in the record of a proceeding. The special verdict returned in this case, in order to support a judgment for the appellant, must contain every fact essential to support a recovery. The *gravamen* of this action is the willful act of the appellee's servant in running the train against the deceased. Willfulness denotes a condition or state of mind. It is inconsistent with the idea of accident, inadvertence, mistake or negligence. A willful act is one designedly, purposely or intentionally done, as contra-distinguished from accident, inadvertence or the absence of design. *Chicago, etc., R. R. Co.* v. *Nash*, 1 Ind. App. 298.

True, there may be a willful act, in a legal sense, without a formed and direct intention, and there may be willfulness where there is no direct or positive intention to inflict injury. In other words, there may be a con-

structive or implied intent.    *Palmer* v. *Chicago, etc.,* R. R. *Co.,* 112 Ind. 250 (255).

But the intent, when found, is a fact, and not a matter of law. It is only the process by which the intent is reached or determined that is a matter of law. If one recklessly injure the person or property of another under such circumstances as to evince an utter disregard for the rights of others, an intention to inflict the injury will be supplied by operation of law, and he will be charged with responsibility as for a willful injury, without regard to his actual intention.    *Overton* v. *Indiana, etc.,* R. W. *Co.,* 1 Ind. App. 436 (439.)

It is a familiar rule of evidence that every person of sound mind intends the natural and probable consequences of his wrongful and unlawful acts, and this rule applies to civil as well as criminal cases. Hence willful intent may be shown by direct evidence, or it may be established by conduct which shows an utter disregard to consequences and an indifference to the rights of others, as the doing of an act with knowledge that some one is unconsciously or unavoidably in a situation of danger.    *Gregory, Admr.,* v. *Cleveland, etc., R. R. Co.,* 112 Ind. 385 (387).

So, if one conceive a felonious intent to injure the person or property of another, and in attempting to carry out his unlawful purpose he accidentally injure the person or property of another, the law transfers the intent to the person or property injured, and the actor may be required to answer for his misconduct in both criminal and civil proceedings. So here, if it was the intent and purpose of the engineer to run down Kendall, and in attempting to carry out that purpose he accidentally ran down the decedent, the intention and willful purpose which the engineer had against Kendall, by operation of law, is transferred to the decedent, and the appellee should

be required to answer for the tortious conduct of its servant.

There can be no recovery in this case unless willfulness be established, for willfulness is of the very essence of the action. The appellant insists that willfulness, on the facts of this case, is a conclusion, an inference, or matter of law to be drawn by the court, while the appellee insists that it is a matter which should have been found by the jury in order to support a judgment for the appellant.

It often becomes an important matter to determine what facts should be found by a special verdict or finding, and what questions should be determined by the jury, and what questions are for the court, and what are conclusions of law and what are conclusions of fact. Upon these points considerable confusion exists in the adjudicated cases. A recurrence to the general principles, and to the method of procedure in judicial controversies, may assist in the solution of the question before the court.

In determining controversies, courts and juries deal with questions of fact and questions of law. When a controversy is submitted, the first and most essential step is to determine the facts, for the facts are the source and cause of the law. A fact, as the term is used in legal proceedings, is an event; a thing done or said; an act or action, which is the subject of testimony.

The condition or state of mind at a given time is a fact. If any emotion is felt, as joy, grief, or anger, the feeling is a fact. If the operations of the mind produce an effect, as knowledge, skill, intention, this effect on the mind is a fact. When the mental processes lead up to and produce a desire or intention to do a certain thing, such state of mind is a fact. Willfulness is a desire or intention to produce a certain result; hence willfulness

is a fact. This, at the least, is the general rule. We ascertain the existence of a fact by means of evidence.

The evidence and each item thereof are, in a certain sense, facts. But the different items of the evidence are not necessarily such facts as call in operation the law. It is the *proof,* the facts resulting from the evidence, that invoke the law. It is the chief purpose of a judicial inquiry to ascertain the probative or ultimate facts; the application of the law to them follows as a necessary incident. After the evidence has all been heard and the witnesses have left the scene, the court or jury trying the cause proceeds to weigh and consider the evidence, with the view of determining the facts which set the law in operation. The natural order of procedure is to consider, first, the credibility of the witnesses, for everything depends upon the confidence or belief given them. The testimony of those that are deemed worthy of belief are retained and that of those unworthy of belief rejected. Another step is to weigh directly contradictory testimonies, keeping that which preponderates and rejecting the other. Opposing or seemingly contradictory testimonies, which admit of reconciliation are reconciled if possible. All immaterial facts and evidence are discarded.

By such means all the facts necessary to be determined are drawn into a comparatively small compass. When these facts are found they naturally range themselves in their proper position as to time and place, and as the other incidents require, and form a connected story. Often there is direct evidence of every part of the story; that is, witnesses have testified directly to the existence of each fact.

In such cases there is no occasion to resort to presumptions or inferences. But it frequently happens that the facts proved by the direct evidence, form an incomplete story; the chain of facts is broken and imperfect;

there is wanting the evidence of some fact or facts to make the story connected and complete. In such an event, the missing facts can sometimes be supplied from the facts proved by the direct evidence. The means by which the missing fact is determined is, by a process of reasoning, often aided by artificial rules of law.

We apply our knowledge and experience, founded on the usual connection between the facts proved and the missing fact, the one being usually found to be the companion or effect of the other. From the known facts we may deduce, presume or infer the missing facts thus the facts proved by the direct evidence become evidence, although not direct, of the wanting facts, and they, united with the inferences, constitute what is usually denominated circumstantial evidence.

Every fact is intimately associated and connected with many other facts. Whenever the story is incomplete or the chain of facts is broken, we have occasion to resort to presumptions or inferences. From the known facts we attempt to deduce the unknown. We state a hypothesis, which assumes the existence of the unknown facts. This hypothesis is maintained or established by a process of reasoning based upon all the connections and relations usually existing between the facts proved and the facts assumed. The wider and the more extended our knowledge and experience, the better qualified we are to draw correct conclusions. The process of reasoning, by which the existence of the unknown is determined from the existence of the known, calls into exercise the highest functions of the human intellect. This same method of reasoning is applied in all departments of human knowledge, physical as well as moral.

Strictly speaking, all presumptions are primarily presumptions of fact. Those rules of law which assume a fact for the sake of expediency, are not strictly presump-

tions.   In a judicial investigation, when a presumption arises from facts, it has not naturally any greater force than in any other inquiry.   But there are certain presumptions to which the law has affixed degrees of certainty.   Such presumptions are denominated presumptions of law.   There are two kinds of such presumptions, conclusive and rebuttable.   When a presumption arises from certain facts, to which the law forbids or dispenses with any further inquiry or evidence, such presumption is a conclusive presumption of law.

A rebuttable or disputable presumption of law is one in which the connection between certain facts or things is not so intimate or so universal as in a conclusive presumption.   In such presumptions the law does not go so far as to forbid the reception of all evidence to the contrary, but it does define the nature and amount of evidence from which a fact may be inferred in the absence of all opposing evidence.   Thus it appears that in a rebuttable presumption the law defines the nature and amount of evidence necessary to establish a *prima facie* case, and throws the burden of proof on the opposite party, and if no opposing evidence is offered, the fact must be found in favor of the presumption, but if any opposing evidence be offered, then this presumption stands upon nearly, if not quite, the same basis as an ordinary presumption of fact.   When a fact is determined by the aid of a conclusive presumption, or by the aid of a rebuttable presumption in the absence of countervailing evidence, such fact is a conclusion or inference of law.   If a fact be determined by presumptions, unaided by rules of law, such fact is a conclusion or inference of fact.   Presumptions are merely aids to the ascertainment of those facts concerning which there is no direct testimony.   The rules of law which govern presumptions should not be confounded with the rules

of law which are set in operation by the proof or established facts. The first is but the method of procedure, by which certain ends are reached; while the latter is the enforcement of the established rules of conduct and principles of justice. They are both rules of law, but the latter is of superior importance. Presumptions are used to establish facts, and not to determine the law. The inferences arising may be so strong that the law will conclusively presume the existence of a fact. But when the fact is determined it sets in operation other principles of law.

It is the province of a special finding, or verdict, to find the facts within the issues upon which the law of the case depends. This includes not only the facts established by the direct evidence, but also the inferential facts. It sometimes happens that the inferential facts depend, in a measure, upon facts other than those established by the direct evidence. Such other facts are denominated evidentiary facts. In such a case the verdict or finding should contain such evidentiary facts as well as the ultimate facts. Without a finding of such evidentiary facts the inferential fact can not be legitimately drawn. Thus, if the issue be conversion or negligence, the jury can not conclude generally that a party was guilty, but all the facts necessary to support such inference must be found and set out in the verdict. Ordinarily it is the duty of the court to ascertain and apply the law, but there are cases in which the jury have not only the right to determine the evidentiary and ultimate facts, but also the law as applicable to the facts. The process by which the law, as applicable to any given state of facts is ascertained, is similar to that by which the facts themselves are determined. It is true that there are certain so-called presumptions, such as "every man is presumed to know the law, and that 'the court is presumed to know

the law,'" but these, strictly speaking, are not presumptions at all.    They are maxims, or rules, of law, based upon expediency or public policy.    Lord Mansfield said more than a hundred years ago that "it would be very hard upon the profession if the law was so certain that everybody knew it; the misfortune is that it is so uncertain that it costs much money to know what it is, even in the last resort."    And Justice Maule remarks:    "If everybody knew the law there would be no need of courts of appeal, whose existence shows that judges may be ignorant of law."    5 Lawson Presump. Ev.

The briefs of the learned counsel now before us demonstrate the uncertainty of the law.    The court, in trying a case, is required to determine the law as applicable to the facts.    Ordinarily the court satisfies itself of the law of a case by an examination of the statutes and precedents.    In other words it takes judicial knowledge of domestic laws; but there are exceptions to this rule. In former times, in certain kinds of cases, it was customary to plead the law as well as the facts.    Even public acts of parliament were frequently recited in declarations for the purpose of showing a duty.    So, also, were many customs or common law rules.    *Crouch* v. *London, etc., R. W. Co.*, 14 C. B. 254.

A party is still required to plead and prove a foreign law, a local custom, a special statute and ordinances of municipalities.    In such cases the jury is required to determine the existence of the law the same as any other fact.    By the constitution of this State the jury have the right to determine the law as well as the facts in criminal cases.    Human conduct is influenced by so many varying circumstances that it is sometimes difficult, if not impossible, to determine a fixed rule of conduct.    In some instances the law has no fixed standard.    The custom, or rule, of conduct must then be determined by the

Barr, Administrator, *v.* Chicago, St. Louis and Pittsburgh R. R. Co.

jury. If a train of cars, in plain view, were approaching a highway crossing at a moderate rate of speed, and, after giving the danger signals, a traveler on the highway should heedlessly attempt to cross, and become injured, there would be no negligence or liability on the part of the railroad company. But if the train should approach a crossing in a populous city at a high and dangerous speed, without giving the danger signals, and a traveler on the highway should be injured, the railroad company would be negligent. There would be no necessity of submitting the question of negligence to a jury in such cases; the law has a fixed standard, and the court will apply it without the aid of a jury.

But there are a large number of cases between these two extremes, where it is difficult to determine how a prudent man would act under the circumstances. Here the law has no fixed rule of conduct. The jurors, who come from the body of the community, and who are generally composed of men of various callings, and who, in their experiences, have come in contact with and observed the conduct of men under various conditions, are better qualified to determine the proper rule of conduct under the given circumstances than the judge of the court, whose experience is usually limited. It was formerly the rule to try mercantile cases before a special jury composed of merchants, who had experience and knowledge of the custom of merchants. This was upon the theory that their knowledge and acquaintance with the custom of merchants rendered them better qualified to determine the rule of conduct in a given case than the judge or court.

It is upon the same theory that the ordinary jury are now deemed better qualified to determine the degree of care that a prudent man should exercise under certain given conditions than the court in the absence of a fixed

standard of care.    It is in this sense that the jury is said to have the right to determine the law as well as the facts.    10 Am. Law Rep., p. 422.

Willfulness is usually, if not always, a matter of fact.

The intimation in *Overton* v. *Indiana, etc., R. W. Co., supra,* and in *Palmer* v. *Chicago, etc., R. R. Co., supra,* is, that it may sometimes be a question of law.  We think, however, that the meaning of those decisions is that when conditions exist to which the law attaches strong or conclusive presumptions, then  the method by which willfulness is reached is a matter of law, but when willfulness is a fact, it is like any other fact in the case.    But whether it be a question of fact or a question of law in this case, it was a matter which should have been determined by the jury.    The special verdict being silent upon this point, it is insufficient to support a recovery in favor of appellant.

Judgment affirmed, at the costs of appellant.

All concur in the result, but not in all the reasoning.

Filed June 5, 1894.