In re PIERCE, BUTLER & PIERCE MFG. CO.

(Circuit Court of Appeals, Second Circuit. November 13, 1917.)

No. 3.

1. BANKRUPTCY ⨏439—REVIEW—SCOPE.
Orders in bankruptcy for payment for publication of notice of sale are subject to revision of the Circuit Court of Appeals only in respect of law.

2. BANKRUPTCY ⨏446—FINDINGS—MODE OF STATEMENT.
Though a finding of fact in a proceeding in bankruptcy, submitted to a special master, was in his report stated as a conclusion of law, the method of statement cannot affect the binding nature of the finding in finding of fact.

3. FRAUD ⨏64(1)—PROVINCE OF COURT—QUESTIONS OF FACT.
Whether a party acted in good faith in a particular transaction is a question of fact, and not of law.

4. BANKRUPTCY ⨏446—REVIEW—FINDINGS.
A finding of fact by a special master, affirmed by the court of bankruptcy submitting the case, is, where supported by some evidence, conclusive on the appellate court.

5. SALES ⨏78—PRICE—CONTRACTS.
Where a contract of sale, either executed or executory, contains no specific agreement as to price, the law implies that the sale will be at a reasonable price.

6. SALES ⨏340—RIGHT TO MAINTAIN.
Assumpsit will lie to recover reasonable price of an article sold, where no price was specified.

7. NEWSPAPERS ⨏5(2)—PUBLICATION—COMPENSATION—LEGAL NOTICE.
A bankrupt owned property in several states, and the order for sale directed that publication should be made in newspapers of general circulation in the cities of New York, Chicago, and Syracuse. The trustee's attorneys prepared a notice of sale, specifically describing the various properties to be sold, stating where, when, and how the sale was to take place. This notice was sent by mail to a Chicago newspaper company, with instructions to insert it in the issue of July 2, 1914, and directions that, in case any questions should come up, to consult the trustee's attorney by telephone. The newspaper company in good faith printed the notice of sale on a page devoted to financial advertisements and news, instead of under legal notices, a subheading of classified advertisements, where such matters as notices of probate, etc., were published. Held, that, as the notice of sale was a most unusual one and the newspaper company acted in good faith, it was entitled to compensation at the rate charged for space in the page on which the notice was published, though the rate for that space was higher than the rate under classified advertisements.

Petition to Revise an Order of the District Court of the United States for the Northern District of New York.

In the matter of the bankruptcy of the Pierce, Butler & Pierce Manufacturing Company. Petition by the Chicago Tribune for payment

for printing notice of sale, contested by the trustee. On exceptions, the report of the master was disapproved, and compensation in a less amount than claimed allowed (231 Fed. 312), and the Chicago Tribune petitions to revise the order. Reversed and remanded, with directions.

The bankrupt company owned realty in several states, and, when its trustee sold the same, the order of sale directed that, in addition to the usual notice within the district of adjudication, there should be "further publication in at least one newspaper of general circulation in each of the cities of New York, Chicago, and Syracuse." The trustee's attorneys thereupon prepared a "Notice of Sale," specifically describing the various properties to be sold, and stating where, when, and how the sale was to take place; a document requiring 34 pages for reproduction in this record. This notice was then sent by mail to the Chicago Tribune, with instructions not to "fail to get it into" the issue of July 2, 1914, and the statement, "If any question comes up about the notice, call the writer [trustee's counsel], on the telephone," at either of two given addresses in Syracuse and Norwich, N. Y., respectively. This letter and the inclosed notice was received in Chicago on July 1, and publication was made on July 2, and thereafter, on a page of the Tribune devoted to financial advertisements and news, and not under "Legal Notices," a subheading of "classified" advertisements, and where in the same issue appeared such matters as probate notices or the like. The newspaper's rate for space on the page that bore this "Notice of Sale" was nearly twice as much as that for "Legal Notices" on the "classified" page.

A bill was presented to the trustee for the larger amount; he declined to pay. The Tribune filed a petition for payment of $1,384.56, and the trustee answered, denying the "reasonable worth" of the service to be more than $500. The issue thus formed was by consent tried before a special master, who found as facts (inter alia): (1) That when petitioner received the letter ordering publication on July 2d there was no reasonable opportunity for communication with the sender and yet permit publication at the time appointed. (2) That the part of the newspaper in which publication was made was appropriate and actually used for giving the advertisement wider publicity than was thought to arise from notices in the "classified section." (3) That the charge made by the petitioner was its usual price, and was fair, reasonable, and in accord with the Chicago market rate for similar service. From these facts were drawn as conclusions that the trustee had left the petitioner fairly and reasonably to determine in what part of its paper to insert the advertisement, that the petitioner had reasonably and in good faith made such selection, and therefore its bill should be paid as presented.

The District Judge set aside this report, holding that the Tribune was "not called upon to conjecture, nor justified in assuming that the trustee had any purpose or desire other than that the notice should be published in the spaces devoted to the publication of that class and kind of work, viz. legal notices, in a pending proceeding in the bankruptcy court." The fact findings of the master were not varied by the lower court, but it was held as a legal conclusion that petitioner could take no more than the rate for classified advertising, or $774. To review this ruling the petition before us was filed.

Wilson, Cobb & Ryan, of Syracuse, N. Y. (Charles P. Ryan, of Syracuse, N. Y., of counsel), for petitioner.

Nelson P. Bonney, of Norwich, N. Y., and William Mackenzie, of Syracuse, N. Y., for trustee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] As orders in bankruptcy such as this are subject to our revision only in respect of law, it is necessary to ascertain with precision the facts as found in the court below.

[2, 3] The special master stated the good faith of the petitioner as a conclusion of law, instead of making it a finding of fact; his report in its form, and separate headings of fact findings and legal conclusions, follows the usual practice of this state. This method of statement cannot change the inherent nature of what is found, and we therefore inquire whether the good faith of petitioner in doing what it did is a fact, and the ascertainment thereof a finding of fact.

Good faith is a state of mind, an attribute of character. It exists; it is in being; yet its existence or being is necessarily discovered only by inference. But such inferential ascertainment is consistent with an existence not in the least derived from or depending on the law. Therefore good faith or bad faith is a fact to be ascertained by the triers of fact—in this case, the master or District Judge; in most instances the jury. As was well said in Nolan v. N. Y., etc., R. R., 70 Conn. 159, 39 Atl. 115, 43 L. R. A. 305, the inferences produced by weighing evidence and the credit of witnesses, are adjudicated facts, and can be retried only by an appellate court having jurisdiction in the trial of such facts. Similarly an emotion is a fact, and so is the mental result of emotion or desire—thus knowledge, intent, or willfulness are facts. Barr v. Chicago, etc., R. R., 10 Ind. App. 433, 37 N. E. 814.

[4] It follows that as the District Judge did not reverse or modify the master's finding of good faith, and it is not without evidence to support it, we are bound to assume it in considering this petition.

[5-7] The legal question remaining is whether under the circumstances stated the petitioner was lawfully entitled to select for the trustee's advertisement that part of its paper which gave widest publicity to an unusual sale, or was bound to put it where statutory notices were inserted. It may be noted here that the finding of good faith renders superfluous any discussion of the inference possible from the higher cost of doing what was done.

Where a contract for sale, either executed or executory, contains no specific agreement as to price the law supplies a reasonable one (Acebal v. Levy, 10 Bing. 376; Hoadley v. McLaine, 10 Bing. 482), and this contract was for a sale of space. Assumpsit lay for such reasonable price (Jenkins v. Richardson, 6 J. J. Marsh. [Ky.] 441, 22 Am. Dec. 82); i. e., there was an implied promise to pay for what the purchaser obtained; and this trustee obtained a better article than would have been his, had the advertisement appeared where he now says he wanted it.

Though market value and reasonable value are not always the same (Lovejoy v. Michels, 88 Mich. 29, 49 N. W. 901, 13 L. R. A. 770), it is found that petitioner's price in this case was both. If, then, the Tribune acted in good faith, and sold its space at a fair market price, it is difficult to see why it should not be paid. The reason deemed sufficient below is that, as a matter of law, it was the duty of petitioner to insert "legal notices in a pending proceeding in the bankruptcy court" in "classified" advertising—that being the place for "that class and kind of work."

This presupposes that the newspaper manager in Chicago was familiar with what would be "legal notices" in the Northern district of New York, concerning which there is no proof, and certainly the trustee furnished no information. It also assumes that this "Notice of

Sale" was a usual or at least simple thing; we take judicial (or professional) notice that it was most unusual.

For these reasons, we find no legal compulsion on petitioner to take one course rather than the other, and, if there was no obligation by law, there was (also by law) room for honest choice. As such choice was made, the master's report was right.

Reference is given us to Konitzky v. Meyer, 49 N. Y. 571. That decision recognizes a vendor's right to mingle cheaper and costlier ingredients in what he sells without price agreement, "in the usual manner." This is a fairly close analogy, but the matter must remain, after prolonged search, without further citations of authority.

Order reversed, with costs, and cause remanded, with directions to confirm the report of special master.