**THORNTON v. GAULT et al. (two cases).**
**Nos. 907, 910.**

District Court, E. D. Kentucky, Jackson Division.

Feb. 11, 1937.

Joseph S. Botts, of Lexington, Ky., for plaintiffs.

E. C. Wooton, of Hazard, Ky., for Herald Pub. Co.

FORD, District Judge.

These are equity receivership cases instituted for the purpose of liquidating the assets of the estates involved, for the benefit of creditors. The receiver, who is the same person in each case, was ordered to sell publicly numerous tracts of real estate, after first publishing notices containing descriptions of the various properties and the terms of the sale, in a newspaper having general circulation in the county wherein the property was located, as required by act March 3, 1893, § 3, 27 Stat. 751, as amended by the Acts of Congress of April 24 and June 19, 1935 (28 U.S.C.A. § 849).

In compliance with the orders of the court, the receiver employed the Herald Publishing Company of Hazard, Ky., to publish the notices of sale as prepared by him. They were duly published in four consecutive weekly issues of The Hazard Herald. The publisher filed with the receiver its bills for the services so rendered as follows:

In Equity Action No. 907:

| | |
|---|---|
| 936 lines per issue at 10 cents per line per issue for four issues | $378.40 |
| 24 inches of display advertising of the sale of said property at request of receiver | 12.00 |
| Total | $390.40 |

In Equity Action No. 910:

| | |
|---|---|
| 577 lines per issue at 10 cents per line per issue for four issues | $203.80 |

No agreement was made as to the amount to be charged for the advertisements.

The bills being far in excess of the amount to which the publisher would be entitled under the provisions of sections 853 and 854 of the Revised Statutes (28 U.S.C.A. §§ 606, 607), the receiver declined to pay either of the bills and has moved the court to fix the amount to be paid.

[1] The publisher claims that under an Act of Congress of June 20, 1878 (20 Stat. 216, 44 U.S.C.A. § 322), he is entitled to charge the same commercial rate for this service which is usually charged private individuals.

This statute was a part of the sundry civil appropriation act for the fiscal year of 1879, by which provision was made for the expenses of the several departments of the government, and the section referred to relates only to such advertisements as were authorized by law for governmental departments at the expense of the government. It clearly has no application to advertising expenses ordered by courts in civil actions, chargeable to litigants, or payable out of funds held under equity receiverships for the benefit of creditors.

The receiver's disapproval of the accounts is based upon the view that the charges are entirely governed by sections 853 and 854 of the Revised Statutes (28 U.S.C.A. §§ 606, 607). These provisions are taken from an Act of Congress of February 26, 1853, 10 Stat. 161, 168, and are a part of chapter 16 of the Revised Statutes, regulating fees to be taxed and allowed in the courts of the United States. These sections of the act related to "printers' fees" and for publishing in a newspaper any notice or order of any court, and fix a fee of 40 cents per folio of 100 words for the first insertion and 20 cents per folio for each subsequent insertion.

Newspapers, like other private business enterprises, are at liberty to sell their services, or withhold them, at their pleasure. Rates and charges regarded as adequate and reasonable more than 80 years ago may fall far short of the mark under modern conditions. If allowances for such services in equity receivership cases be confined to the meager rates fixed by this old act, it is obvious that the essential services of modern newspapers would, in most cases, be unavailable to the courts.

In the case of Trustees of Internal Improv. Fund v. Greenough, 105 U.S. 527, 535, 26 L.Ed. 1157, the Supreme Court, speaking through Mr. Justice Bradley, pointed out that the act of February 26, 1853, was intended to reach only taxable costs commonly so-called as between party and party. Although the act does appear to cover the whole ground of taxation of costs, both at law and in equity, the court reached the conclusion that:

"The fee-bill is intended to regulate only those fees and costs which are strict-

ly chargeable as between party and party, and not to regulate * * * the power of a court of equity, in cases of administration of funds under its control, to make such allowance to the parties out of the fund as justice and equity may require. * * * And the act contains nothing which can be fairly construed to deprive the Court of Chancery of its long-established control over the costs and charges of the litigation, to be exercised as equity and justice may require."

While this case did not involve claims for printing, it did involve other expenses limited by the provisions of the act of 1853. The analogy seems to be quite sufficient to make it clear that the provisions of this act have no application to the costs of advertising incurred in these actions by the receiver in complying with the orders of the court. These costs, which are paid out of the fund in the custody of the court, are allowable by the court of equity upon the basis of their reasonableness "as justice and equity may require." Such is the prevailing rule as to costs of advertisements in bankruptcy cases. In re Pierce, Butler & Pierce Mfg. Co., 246 F. 814 (C.C.A.2).

Such costs might appropriately be regulated by a standing rule of the court, or by contracts made with the approval of the court. In the absence of both, the rule of equity, above referred to, is applicable.

This brings us to the question of what would be a reasonable allowance for the services rendered in these cases. I know of no fairer standard of measurement than that which governs similar services rendered in the state courts, namely, "fifty cents per linear inch, single column, solid, eight point measure, for each insertion." Kentucky Statutes, § 14a-3; Cornett v. Muncy, 228 Ky. 390, 15 S.W.(2d) 251. For the publisher to ask more would seem unreasonable, for the court to allow less would seem unjust.

Applying this standard to these cases, it appears, in case No. 907, the advertisement (a copy of which is in the record) contains 140 lineal inches of single column, which, at 50 cents per lineal inch, amounts to $70 for each insertion or $280 for the four insertions. In case No. 910, the advertisement contains 86 lineal inches of single column, which, at the same rate, amounts to $43 for each issue · or $172 for the four issues. Although these measurements include some space, which,

strictly speaking, is not solid printing, and the type used may be slightly larger than 8 point measure, the difference does not appear substantial. The propriety of the charge of $12 for a display advertisement in case No. 907 is not questioned.

I am of the opinion that these amounts are reasonable and should be allowed for printing the advertisements in these cases. Let an order be entered in each case in accordance herewith.