Frances B. GREENE and Myron L. Greene, as Executors under the Last Will and Testament of Louis A. Greene, deceased, stockholders of C.I.T. Financial Corporation, suing on behalf of themselves and all other stockholders similarly situated and on behalf of and in the right of C.I.T. Financial Corporation, Plaintiffs,

v.

Arthur O. DIETZ, George R. Urquhart, Leo H. Spanyol, C. John Kuhn, L. Walter Lundell, Fred Meissner and C.I.T. Financial Corporation, Defendants.

United States District Court
S. D. New York.
July 16, 1956.

466

Morris J. Levy, New York City, for plaintiffs.

Cravath, Swaine & Moore, New York City, for the individual defendants, Albert R. Connelly, New York City, of counsel.

Melbourne Bergerman, New York City, for C. I. T. Financial Corp.

DAWSON, District Judge.

This is an action under § 16(b) of the Securities Exchange Act of 1934 (hereinafter called the "Act"), 15 U.S.C.A. § 78p(b).

To eliminate "insider profits", the Act enables any listed corporation to recover from its directors and officers all profits they realize from a purchase and sale or sale and purchase, within less than six months, of such corporation's stock. The individual defendants have each realized a profit from dealing in C.I.T. common stock. Their purchases were made pur-suant to options granted under a Restricted Stock Option Plan. The sole defense raised by the defendants is that the Securities and Exchange Commission (hereinafter called the "Commission") in Rule X–16B–3 has exempted stock acquired under a Restricted Stock Option Plan from § 16(b) of the Act.

The plaintiffs are the holders of record of 100 shares of common stock of C.I.T. Financial Corporation (hereinafter called "C.I.T.") out of the approximately 9,150,000 shares outstanding. They bring this action on behalf of, and in the right of, C.I.T. and seek to recover for C.I.T. profits alleged to have been realized by the individual defendants in "short swing" sales and purchases of stock of C.I.T. Each of the individual defendants is a director and all but one is an officer of C.I.T. The stock of this corporation is listed upon the New York Stock Exchange.

### The Statute

The portions of § 16(b) of the Act which are relevant to the issue are as follows:

"For the purpose of preventing the unfair use of information which may have been obtained by such * * * director, or officer [of a company having equity securities listed on a national securities exchange] by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer * * * within any period of less than six months, * * * shall inure to and be recoverable by the issuer * * *. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more

than two years after the date such profit was realized. This subsection shall not be construed to cover * * * any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection." 15 U.S.C.A. § 78p(b).

### The Facts

All of the essential facts are set forth in a stipulation of facts, and all of the facts so set forth in that stipulation are found by the Court. The facts which are significant for the purpose of this opinion are as follows:

1. The C.I.T. Restricted Stock Option Plan was specifically approved by the stockholders of C.I.T. at a special meeting held on June 26, 1951, for which proxies were solicited in accordance with the Rules and Regulations under § 14(a) of the Act, 15 U.S.C.A. § 78n(a). The validity of the Plan and options granted thereunder and the compliance with the proxy rules of the Securities and Exchange Commission in connection with the approval of the Plan by stockholders have heretofore been decided in an action entitled Kaufman v. Shoenberg, 1952, 33 Del.Ch. 211, 91 A.2d 786.

2. The Plan provides that options for a limited amount of authorized but unissued common stock of C.I.T. may be granted from time to time prior to August 31, 1956; that each option is exercisable only within five years from the date of granting; that options may be granted only to regular salaried employees of C.I.T. or its subsidiaries; that the option price must be not less than 95% of the fair market value of the stock on the date of the granting of the option; that the shares must be paid for in full, in cash, upon the exercise of the option; that each optionee must agree to remain in the service of C.I.T. or one of its subsidiaries for a period of at least two years from the date of the granting of the option. The acquisition of the securities does not involve the payment of any cash except the funds payable pursuant to the option contract.

3. The Plan is administered by a committee of five directors, four of whom are, and at all times have been, ineligible to receive options under the Plan. The remaining number of the committee has been a regularly salaried employee of one of the subsidiaries of C.I.T., but prior to having been appointed to the committee, he advised the Board of Directors of C.I.T. in writing that he did not wish to receive then or later an option under the Restricted Stock Option Plan. Two members of the committee participate in the C.I.T. Retirement Plan, a group insurance plan, and a group surgical and medical plan, which plans are open to all employees of C.I.T. and its subsidiaries.

4. The committee has authorized the granting of options to 229 employees of C.I.T. and its subsidiaries, including the individual defendants. Each of the individual defendants received an option on July 2, 1951, the option price being $19.10 a share, which was more than 95% of the market value of C.I.T. common stock on that date.

5. The options, by their terms, were non-transferable except by will or the laws of descent and distribution.

6. The issue involved in this litigation resulted from the exercise by the individual defendants of certain of these options in 1953 and 1954, and arose by virtue of the fact that each individual defendant, within six months before, or within six months after, the date upon which he exercised his option, sold shares of common stock of C.I.T. at a price or prices higher than the option price.

7. The individual defendants did not purchase any shares of common stock of C.I.T., other than upon the exercise of options granted under the Plan, within less than six months before, or less than six months after, the date of such sales, except in one instance. In that instance, the defendant L. Walter Lundell sold shares of common stock on the New York Stock Exchange and within four months thereafter, purchased shares of common stock on that Exchange at a price higher than the price at which he sold, which

transaction resulted in no profit to this defendant.

### The Issues

The plaintiffs urge that:

1. Rule X–16B–3 of the Commission did not exempt from the provisions of § 16(b) of the Act acquisitions of shares of stock, by officers or directors of a listed corporation, pursuant to a Restricted Stock Option Plan.

2. That even if Rule X–16B–3 of the Commission exempted acquisitions of shares of stock by officers or directors of a listed corporation from the provisions of § 16(b) of the Act, nevertheless, the Restricted Stock Option Plan of C.I.T. did not conform to the requirements of the Rule.

3. That Rule X–16B–3 of the Commission, if it exempted acquisitions of shares of stock pursuant to a restricted stock option, by officers or directors of a listed corporation, from the provisions of § 16(b) of the Act, was beyond the power of the Commission.

These issues will be discussed in the order in which they have been stated.

### Discussion

I. Did Rule X–16B–3, as in effect at the time of the acquisition of shares by the defendants, exempt acquisitions pursuant to a Restricted Stock Option Plan from the provisions of § 16(b) of the Act?

It is clear from the statute that it does not cover "any transaction * * * which the Commission by rules and regulations may exempt as not comprehended within the purpose" of § 16(b) of the Act.

Acting pursuant to this provision, the Commission, on October 9, 1935, promulgated Rule X–16B–3. This Rule became obsolete because, by its terms, it was limited in application to options granted on or prior to June 6, 1934, see 17 C.F.R. § 240.16b–3(a) (1949 ed.). Accordingly, on May 5, 1949, the Commission amended the Rule so that it exempted "any purchase of an equity security (other than a convertible security or a warrant or right to purchase a security)" if the security was acquired "pursuant to a bonus, profit-sharing or other similar plan" meeting the conditions set forth in the Rule. The Rule, as so promulgated, did not exempt stock options or stock acquired pursuant to such options.

However, in 1950, Congress enacted § 130A of the Internal Revenue Code (now § 421 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 421) which made it possible for an employee to purchase stock of his employer corporation without being subject to taxation at the time of the purchase if the stock was acquired under a restricted stock option as defined in the Act. Thereafter, the Commission, in September, 1952, amended and broadened Rule X–16B–3, to become effective November 1, 1952. 17 Fed.Reg. 8901. The full text of the Rule, as amended in 1952 and as in effect at the time of the acquisition of the shares involved in this action, is as follows (the italics indicating certain of the words added by the 1952 amendment to the Rule):

"Rule X–16B–3. Exemption From Section 16(b) of Certain Acquisitions of Securities Under Stock Bonus or Similar Plans.

"Any acquisition of shares of stock *or non-transferable options* (other than convertible stock or stock acquired pursuant to a *transferable* option, warrant or right) by a director or officer of the issuer of such stock shall be exempt from the operation of section 16(b) of the Act if the stock *or option* was acquired pursuant to a bonus, profit-sharing, retirement or similar plan meeting all of the following conditions:

"(a) The plan has been approved specifically, or through the approval of a charter amendment authorizing stock for issuance pursuant to the plan, by the security holders of the issuer at a meeting for which proxies were solicited in accordance with such rules and regulations, if any, as were then in effect under section 14(a) of the Act.

"(b) If the selection of the persons who may receive funds or securities pursuant to the plan, or the determination of the amount of funds or securities which may be so received by any such person is subject to the discretion of any person, such discretion shall be exercised by (1) a committee of three or more persons having full and final authority in the matter, or (2) the board of directors of the issuer, provided the members of such committee, or a majority of the directors acting in the matter, are not entitled to participate in such plan or in any other similar plan provided by the issuer or any of its affiliates.

"(c) The plan effectively limits the aggregate amount of funds or securities which may be allocated with respect to each fiscal year pursuant to the plan, either by limiting the maximum amount which may be allocated to each participant in the plan or by limiting the maximum amount which may be so allocated to all such participants.

"(d) The acquisition of the securities pursuant to the plan does not involve the payment of any cash (other than the application of funds currently received pursuant to the plan or *payable pursuant to the option contract)* directly or indirectly, to the issuer or any of its affiliates."
(17 C.F.R. § 240.16b–3 1956 pocket supp.)

The first question presented in this action is whether this Rule exempted from the provisions of § 16(b) the acquisition of stock acquired by the defendants pursuant to options granted to them. The plaintiffs urge, in the first place, that the Rule did not exempt the acquisition of stock by the exercise of a stock option since the Rule applied only to stock acquired pursuant to a "bonus, profit-sharing, retirement or similar plan" and did not include specifically a Restricted Stock Option Plan.

The Rule shows on its face that it exempts either the "acquisition of shares of stock" or "non-transferable options" if they meet the requirements of the Rule. The language of subparagraph (d) of the Rule shows that it exempts securities acquired upon the exercise of an option meeting the requirements of the Rule.

The purpose of the 1952 amendment was to extend the exemption provided in the Rule so as to cover restricted stock options in the sense that that term was used in § 130A of the Internal Revenue Code. See "Insider Trading under the Securities Exchange Act" by Donald C. Cook (then Chairman of the Commission) and Myer Feldman (then Special Counsel to the Commission), 66 Harv.L. Rev. 612 at note 168, p. 618 (1953). The Commission itself has stated that the purpose of the 1952 amendment was "to exempt purchases pursuant to restricted stock option plans which meet the same standards as had been provided in the Rule for bonus plans" (Securities Exchange Act Release No. 5291, dated March 22, 1956). The Commission apparently assumed that a Stock Option Plan was "similar" to a "bonus" plan and that a specific reference to Stock Option Plans in the Rule was unnecessary particularly since the Rule specifically referred to the acquisition of securities upon payment of cash "pursuant to the option contract".

However, the failure of the Commission to refer specifically to restricted stock options in the Rule led to many requests for interpretation of the Rule by the Commission. The administrative interpretation by the Staff of the Commission has consistently been that the Rule, as amended in 1952, applied to securities acquired upon the exercise of a restricted stock option. Thus, on March 2, 1953, counsel for C.I.T. submitted the Restricted Stock Option Plan of C.I.T. involved in this litigation to the Commission and asked for a ruling as to whether the acquisition of shares by a director or officer upon the exercise of an option would constitute a transaction which was exempted from the provisions of § 16(b) of the Act by reason of Rule

X–16B–3. Under date of November 18, 1953, the Assistant Director, Division of Corporate Finance of the Commission, replied in a letter which summarized the facts, and then concluded:

"On the basis of the foregoing facts it would appear that the acquisition of common stock of the corporation pursuant to the Restricted Stock Option Plan for Key Employees comes within Rule X–16B–3. It should be noted, however, that the rule exempts only the acquisition of the securities involved and that sales of such securities are not exempted by the rule. Hence, such sales are within the purview of Section 16(b) of the Act if within six months before or after such sales the director or officer effects other acquisitions which can be matched against them."

Apparently, there were many similar requests for interpretations which were answered in the same way. Finally, on March 22, 1956, the Commission, in Release No. 5291, suggested an amendment to Rule X–16B–3 which would clarify the situation. The Commission in this release made it clear that the amendment was merely to express more clearly the original intention of the Commission. The Commission stated:

"The effort to adapt a rule dealing with stock bonus and similar plans, which excluded stock option plans, to stock option plans has led to many interpretative problems for the staff of the Commission. These problems have also been the subject of private litigation in the Courts. Interpretations by the Commission staff have received very limited publicity, and are not official determinations of the Commission.

"The Commission therefore decided, on August 16, 1955, to publish for comment a rule which in effect would codify the interpretations rendered by the staff.

\*        \*        \*        \*

"1. The proposed rule would make clear that the exemption applies to the acquisition of stock pursuant to non-transferable options. This is consistent with the expressed intention of the Commission which amended the rule in 1952 for the purpose of conforming it to the Revenue Act of 1950."

This amendment to the Rule was adopted on May 21, 1956, 21 Fed.Reg. 3647. The amendment clarified any previous ambiguity so as to make it clear that the exemption in Rule X–16B–3 applied to stock acquired by the exercise of non-transferable options. The Commission, in its Release of May 18, 1956 promulgating this further amendment to the Rule, said:

"The amended rule makes it clear that the exemption applies to the acquisition of stock pursuant to non-transferable options. This is consistent with the expressed intention of the Commission which amended the rule in 1952 for the purpose of conforming it to the Revenue Act of 1950." 21 Fed.Reg. 3646.

We have, therefore, a situation where Rule X–16B–3, as in effect at the time of the acquisition of shares by the defendants, was by its terms, even despite some ambiguity, broad enough to cover shares acquired under a Restricted Stock Option Plan, that the Commission has always construed the Rule in this manner, and that the Staff of the Commission advised C.I.T. that it was applicable to the acquisition of shares of stock under the very Plan which is now before the Court.

■ The construction given to a statute, rule, or regulation by those charged with the duty of executing it is always entitled to the most respectful consideration. United States v. Moore, 1878, 95 U.S. 760, 763, 24 L.Ed. 588. The administrative interpretation by a Commission of one of its rules or regulations is of controlling weight unless plainly erroneous or inconsistent. Bowles v. Seminole Rock & Sand Co., 1945, 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700.

■ The Court concludes that Rule X–16B–3 has, during the time of the ac--

quisition of shares by the defendants herein, applied to stock acquired upon the exercise of a restricted stock option which conformed to the requirements of the Rule.

II. If Rule X–16B–3 was applicable to Restricted Stock Option Plans, did the C.I.T. Plan conform *to the requirements of the Rule?*

The plaintiffs contend that even if a restricted stock option plan was covered by Rule X–16B–3, as amended in 1952, nevertheless the C.I.T. Plan did not meet other requirements of the Rule. Their contentions in this respect are as follows:

1. That the Plan does not meet the condition of the Rule that no member of the Committee administering it shall "be entitled to participate in such Plan or in any other similar plan provided by the issuer or any of its affiliates."

None of the members of the committee administering the C.I.T. Plan is eligible to receive an option under this Plan. However, C.I.T. has a Retirement Plan for all employees who attain a certain specified age and complete certain service. Pension benefits under the Retirement Plan are computed with reference to the rate of compensation and length of service and are payable by insurance companies in cash after retirement. Two of the members of the committee administering the Stock Option Plans are participants in the Retirement Plan. They are also participants in a group insurance plan and a group medical and surgical plan for which all employees are eligible. The other three members of the committee who are not, and have not been, employees of C.I.T. do not participate in any of these plans.

A retirement plan or a group insurance plan or a medical and surgical plan is certainly not "similar" to a stock option plan. Those plans cover substantially all employees of the company and provide for cash payments. The stock option plan is an investment plan restricted to certain key employees. The Commission has always taken the posi-

tion that an ordinary pension plan or cash bonus plan or a retirement plan is not a "similar" plan to a stock option plan. (See Commission Release No. 5209, dated August 16, 1955, 20 Fed.Reg. 6195.)

■ The Court concludes that the fact that certain members of the committee may be entitled to participate in a retirement plan, a group insurance plan, or a medical and surgical plan did not mean that they are participants in a plan "similar" to the Restricted Stock Option Plan or make them ineligible to serve as members of the committee administering the Restricted Stock Option Plan.

2. That Ernest Kanzler, a member of the committee administering this Restricted Stock Option Plan is eligible to participate in the Restricted Stock Option Plan.

■ Mr. Kanzler is Vice Chairman of the Board of C.I.T. However, prior to his having been appointed to the committee to administer the Restricted Stock Option Plan, Mr. Kanzler advised the Board of C.I.T. in writing that:

"I do not wish to accept, either now or later, an option under the Restricted Stock Option Plan for Key Employees of C.I.T. Financial Corporation and Its Subsidiaries."

Plaintiffs contend that any such statement would be revocable by Mr. Kanzler and that, therefore, he is eligible to participate in the Restricted Stock Option Plan. Whether it is true that the statement of Mr. Kanzler is revocable may be a debatable point but, in any event, it is clear that during the entire time that Mr. Kanzler has been a member of the Committee administering this Plan, he has, by his own action, been ineligible to receive a stock option. This is all that the Rule requires.

3. That the options granted under the Restricted Stock Option Plan are "transferable".

The Plan provides that "no option granted under the Plan shall be trans-

ferable otherwise than by will or the laws of descent and distribution".

Does the fact that the option may pass, on the death of the holder, by will or by the laws of intestacy make the option a "transferable" option? To so conclude would imply that Rule X–16B–3 applied only to options which became void if not exercised prior to the death of the holder. Such was not the intent of the Commission. The 1952 amendment to the Rule was adopted, as has been stated, to conform to § 130A of the Internal Revenue Code. The then Chairman of the Commission and Special Counsel to the Commission, in an article in the Harvard Law Review, pointed out that the purpose of the amendment was "to include non-transferable options which meet the same conditions" as those set forth in this section of the Internal Revenue Code. "Insider Trading under the Securities Exchange Act", 66 Harv.L. Rev. 612 at 619 (1953).

Section 130A of the Internal Revenue Code required that to qualify for special tax treatments, the options must not be transferable and then defined a restricted stock option as including an option which by its terms "is not transferable by such individual otherwise than by will or the laws of descent and distribution, and is exercisable, during his lifetime, only by him". § 130A (d) (1) (B), Internal Revenue Code.

The Commission, in its interpretations, has consistently taken the position that an option which passes only by will or intestacy is a non-transferable option. Thus, in the amendment to Rule X–16B–3 adopted May 18, 1956 which the Commission said was to carry out its basic intention to exempt acquisitions pursuant to restricted stock option plans and which relates to "any acquisition of non-transferable options or shares of stock including stock acquired pursuant to such options", the Commission specifically said:

"The term 'non-transferable option' includes an option which by its terms is not transferable by such optionee otherwise than by will or the laws of descent and distribution, and is exercisable, during his lifetime, only by him." 17 C.F.R. § 240.16b–3(c) (2).

In 1952 when the amendment to Rule X–16B–3 was promulgated, the words "non-transferable option" constituted in financial and legal circles almost a phrase of art denominating the type of option which was deemed non-transferable under § 130A of the Revenue Code of 1939, as added in 1950. The same meaning undoubtedly was attached to the phrase when used by the Commission.

■ The options issued by C.I.T. were "non-transferable" within the meaning of Rule X–16B–3.

III. Was Rule X–16B–3, as promulgated, within *the power and authority of the Commission?*

Section 16(b) of the Act does not cover any transaction which the Commission, by rules and regulations, may exempt "as not comprehended within the purpose" of § 16(b). Plaintiffs contend that this provision is not authority for exempting acquisitions of shares pursuant to Restricted Stock Option Plans, and urge that such Plans may themselves open the way to abuses which § 16(b) of the Act was designed to prevent.

■ Congress has, however, vested the Commission with discretion to determine what transactions it may exempt "as not comprehended within the purpose" of this section of the Act. This delegation of authority to the Commission to grant exemptions from the Act is lawful. Smolowe v. Delendo Corporation, 2 Cir., 1943, 136 F.2d 231, 240, 148 A.L.R. 300, certiorari denied, 1943, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446.

At the time of the passage of the Act, restricted stock options, as we know them today, were not yet in being. Congress apparently recognized their desirability when it enacted § 130A of the Internal Revenue Code. The fact that the acquisition cost of stock secured pursuant to restricted stock options is a fixed amount removes a substantial part of the speculative evil in "short swing"

transactions which § 16(b) of the Act was designed to prevent.

All of these factors may have been taken into account by the Commission in exempting acquisitions under restricted stock options from § 16(b) of the Act. In any event, the determination of the Commission, an administrative body with powers and facilities to study these problems, that acquisitions of stock under restricted stock options are not comprehended within the purpose of § 16(b) of the Act is one which is not capricious and should not be lightly overturned by the Court.

Moreover, § 23(a) of the Act provides, in part, as follows:

"No provision of this title imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule or regulation of the Commission or the Board of Governors of the Federal Reserve System, notwithstanding that such rule or regulation may, after such act or omission, be amended or rescinded or be determined by judicial or other authority to be invalid for any reason." 15 U.S.C.A. § 78w(a).

The facts show clearly that the acquisitions of shares by the individual defendants were made after counsel for C.I.T. had inquired of the Commission's Staff whether such acquisitions were exempt under Rule X–16B–3 and after the Commission's Staff had advised, in conformity with the policy of the Commission, that such acquisitions would be exempt. Therefore, whether the regulations were within the power of the Commission or not, no liability could be imposed upon defendants for an act done by them in good faith in conformity with the regulation of the Commission. See Lockheed Aircraft Corp. v. Rathman, D.C.S.D.Cal.1952, 106 F.Supp. 810.

## Findings

The Court finds that the acquisition of shares of stock by the individual defendants herein were exempt from the provisions of § 16(b) of the Act.

The Court finds that § 16(b) of the Act gives no right of action to the corporate defendant for any profits realized by the individual defendants on the sale and purchase of C.I.T. shares within the period set forth in the complaint where the purchase thereof was exempt from the provisions of § 16(b) of the Act.

The Court finds that Regulation X–16B–3 of the Commission, as promulgated in September, 1952, was within the power of the Commission.

The Court finds that Rule X–16B–3, as promulgated by the Commission in September, 1952, was applicable to the acquisition of shares of stock under Restricted Stock Option Plans meeting the requirements of said Rule.

The Court finds that the C.I.T. Restricted Stock Option Plan meets the requirements of Rule X–16B–3, as promulgated in September, 1952.

Judgment shall be entered for the individual defendants dismissing the action.