Gertrude VAN AALTEN, Plaintiff,

v.

Roy T. HURLEY, Joseph V. Miccio, S. B. Kurzina, Jr., Jack O. Charshafian, Frank W. Mercik, William T. Lake, James G. Byron and Curtiss-Wright Corporation, Defendants.

United States District Court
S. D. New York.

July 30, 1959.

852

William Rosenfeld, New York City, Milton Paulson, New York City, of counsel, for plaintiff.

Breed, Abbott & Morgan, New York City, Edward J. Ross, Stuart H. Johnson, Jr., Charles J. Lipton, New York City, of counsel, for defendants.

Thomas G. Meeker and J. Gordon Cooney, Washington, D. C., for Securities and Exchange Commission, amici curiae.

BICKS, District Judge.

*Sub judice* are cross-motions for summary judgment. Plaintiff, a stockholder of Curtiss-Wright Corporation, instituted this suit pursuant to Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78p(b),[1] to recover "short-swing" profits allegedly realized by the individual defendants. The important legal issue presented is whether, assuming arguendo the invalidity of Securities and Exchange Commission Rule X–16B–3, 17 C.F.R. 240.16b–3,[2] the exculpatory provision contained in § 23(a) of the Act, 15 U.S.C.A. § 78w, immunizes the defendants from the asserted liability.[3]  In de-

---

[1]. "For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, * * * shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. * * *"

[2]. Rule X–16B–3 purports to exempt from the operation of § 16(b) acquisitions of stock pursuant to restricted stock option plans, such as the one here involved, which conform to the requirements of said Rule.

[3]. Under our view of the case it is unnecessary to decide whether, as the Securities and Exchange Commission contends in its amicus brief, Rule X–16B–3 constitutes a valid exercise of the Commission's rule-making powers. As to this issue we neither express nor intimate an opinion.

ciding the question presented by the instant applications we are called upon to determine the meaning and effect of the much-discussed[4] opinions in Greene v. Dietz, 2 Cir., 1957, 247 F.2d 689, affirming, D.C.S.D.N.Y.1956, 143 F.Supp. 464.

The pertinent facts are not in dispute. Plaintiff is the holder of record of 100 shares of the corporation's approximately 8 million shares of outstanding common stock. At all times here material the common stock of the corporation was listed on the New York Stock Exchange, a national securities exchange. The corporation was organized under the laws of Delaware, and has its principal place of business in Wood-Ridge, New Jersey. At the time of the transactions which are the subject of this suit the individual defendants were key members of the corporation's management team.

The action is based upon acquisitions during 1957 by the individual defendants of shares of the corporation's common stock and sales of common stock within six months of such acquisitions. The defendants admit the sales but as to the alleged purchases, they aver and the undisputed facts indeed are, that such acquisitions were effectuated through exercise of options granted under and pursuant to the corporation's restricted stock option plan. None of the individual defendants sold stock which he had acquired pursuant to said option plan within six months from the date of acquisition. The sales were at a price in excess of the price fixed by the option plan.

The stock option plan was evolved by a Stock Option Committee appointed by the Board of Directors. Three directors comprised the Committee, none of whom was an officer or employee of the corporation or a prospective optionee under the plan. The members of the Board who were eligible to participate in the Plan absented themselves from the Board meeting when the Plan was under consideration. The proposed plan was approved by the Board of Directors on December 31, 1954 and was adopted by an overwhelming majority of the stockholders at the annual meeting held on April 20, 1955. The proxy solicitation material for said meeting duly complied with the Commission's proxy rules.

The plan authorizes the Board of Directors to grant to key employees options to purchase a maximum of 440,000 shares of the corporation's common stock at a price, payable in cash at the time the option is exercised, of not less than 95% of the price reached by the stock on the New York Stock Exchange on the date the option is granted, and to determine the employees to whom options would be granted and the number of shares to be offered to each of them respectively. The right to grant options terminates on December 31, 1964, or at such earlier time as the Board of Directors may determine.

Directors as such are ineligible to participate in the plan; directors who also serve as officers are eligible but are barred from participating in Board action respecting the plan. Options are exercisable during the period beginning one year and ending ten years after the date of the granting thereof. They are non-transferable except by will or the laws of descent and distribution and are exercisable only by the employee-optionee during his lifetime. Upon accepting an option the employee obligates himself to remain in the corporation's employ for at least another two years; in the case of the defendant Hurley, however, his acceptance obligated him to continue on for an additional term of not less than three years.

On December 31, 1954, all of the individual defendants, except the defendant Hurley, attended a meeting at which the defendant Byron, in the course of his duties as Vice-President in charge of personnel, explained the provisions of § 16(b) and Rule X–16B–3. He advised

4. See, e. g., 1957 Annual Survey of American Law 295–297, 33 N.Y.U.L.Rev. 545–547; 57 Colum.L.Rev. 1177 (1957); 71 Harv.L.Rev. 386 (1957); 1957 U.Ill.L.F. 664; 32 Tul.L.Rev. 771 (1957); 43 Va. L.Rev. 1311 (1957). See note 10, infra.

that the corporation's stock option plan complied with the conditions prescribed by the Rule and that acquisitions of stock pursuant to options granted under the plan were exempt from the operation of § 16(b). Later that same day, all of the individual defendants attended a meeting at which counsel for the corporation gave substantially the same advice. Promptly after the Plan became effective, all of the defendants who then were officers [5] duly reported receipt of their respective options to the Commission and to the New York Stock Exchange by filing Form 4.[6] Each defendant from time to time thereafter duly filed a report on Form 4 disclosing the changes in his holdings resulting from acquisitions of stock pursuant to the option plan. The sales and acquisitions alleged in the complaint are reflected in the disclosures made by the defendants consistent with the requirements of the Act and the Regulations promulgated thereunder.

Prior to the earliest transaction here complained of, counsel for the corporation furnished it with an opinion letter and explanatory memorandum, to the effect that Rule X–16B–3 exempted from the operation of § 16(b) stock acquired pursuant to the corporation's option plan. None of the defendants entered into any of the transactions complained of prior to the time he had been apprised of the advice of counsel as to the exemption accorded by Rule X–16B–3. In the affidavits filed by the defendants each of them states that in exercising the option granted to him under the option plan and in making the sales alleged in the

complaint, he relied in good faith on the provisions of Rule X–16B–3, and that when he effected said transactions he had no knowledge or information that in Greene v. Dietz, supra, two members of the Court of Appeals for this Circuit had expressed doubts as to the validity of the Rule.

Plaintiff makes no attempt to controvert the pertinent facts set forth to establish the defense under § 23(a) of the Act. She contents herself with urging that "after June 7, 1957,[7] defendants must conclusively be presumed to have had knowledge of the decision of the Court of Appeals in Greene v. Dietz and could not therefore profess to have exercised options, or sold shares, in reliance on Rule X–16B–3" so that "as a matter of law, [they] could not have relied in good faith upon the * * * exculpatory provisions of Section 23(a) of the Act." Implicit in this contention is the impermissible suggestion that the Court decided an issue which it expressly stated was "not essential to [its] opinion" 247 F.2d 689, 692, or that its expression of doubt as to the power of the Commission to promulgate Rule X–16B–3 is or was intended to be a judicial determination of invalidity.

As originally enacted in 1934, § 23(a) did not contain an exculpatory clause. This provision was added to the Act in 1936 in order "to provide that persons who act in good faith in conformity with any rule or regulation of the Commission * * * shall not be subjected to liability if such rule or regulation is subsequently rescinded or invalidated for

---

5. The defendant Charshafian was not an officer when his option was granted; he reported the grant thereof when he subsequently became an officer.

6. Rule X–16A–1(b) provides: "Rule for the Use of Form 4.—Every person who at any time during any month has been directly or indirectly the beneficial owner of more than 10 percent of any class of any equity security * * * which is listed on a national securities exchange, or a director or an officer of the issuer of such security, shall, if there has been any change during such month in his

ownership of any equity security of such issuer, * * * file with each exchange on which any equity security of the issuer is listed and registered a statement on form 4 (and a single duplicate original thereof with the Commission) indicating his ownership at the close of the calendar month and such changes in his ownership as have occurred during such calendar month. * * *".

7. The first opinion of the Court of Appeals in Greene v. Dietz was dated June 7, 1957.

any reason." S.Rep.No.1739, 74th Cong., 2d Sess., p. 4 (1936). Section 23(a) of the Act, 15 U.S.C.A. § 78w, in relevant part, provides as follows:

"No provision of this chapter imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule or regulation of the Commission * * * notwithstanding that such rule or regulation may, after such act or omission, * * * be determined by judicial or other authority to be invalid for any reason."

■ Exculpatory provisions of like purport are common in administrative statutes; they appear in the rule-making provisions of all the S E C legislation. Loss, Securities Regulation pp. 1097–1098 (1951). Their purpose is to broadly protect those who understandably [8] rely upon a duly promulgated rule of an administrative agency, notwithstanding that such rule is thereafter invalidated. Such protection takes on increasing importance in this modern era when administrative bodies regulate so substantial a segment of our society, and is especially applicable to those cases where judges themselves entertain diverse views as to validity of a particular rule.[9]

■ The language of § 23(a), particularly the portion reading "notwithstanding that such rule or regulation may, after such act or omission * * * be determined * * * to be invalid", makes it clear that the defense afforded by the Section is unavailable where the "act or omission" takes place *after* a determination of invalidity. Since the transactions which are the subject of the complaint occurred before the Rule

was held invalid in Perlman v. Timberlake, supra, and since the only other case theretofore decided and here pertinent is Greene v. Dietz, supra, our initial inquiry is whether in the latter case Rule X–16B–3 was "determined" to be invalid within the meaning of § 23(a).

There the Court of Appeals for this Circuit held that insiders who in good faith relied upon Rule X–16B–3 and sold stock within six months of exercising options granted under a plan conforming to the requirements of the rule were protected from liability under Section 16(b). In its initial opinion of June 7, 1957, a majority of the panel declined to adopt that portion of the opinion below [D.C. S.D.N.Y.1956, 143 F.Supp. 464, 472, 473,] which sustained the rule, stating in part "although not essential to our opinion, we express doubt as to the power of the Commission to promulgate Rule X–16B–3 * * *". 247 F.2d at pages 692, 695. The dissenting Judge agreed with the court below on the question of validity. 247 F.2d at page 696. An application for rehearing was denied on August 12, 1957, by a divided court. In the majority opinion the Court stated that pending re-evaluation of the rule by the S E C, "reliance upon it * * * would be ill-advised." 247 F.2d at page 697.

It is abundantly clear from a study of the Greene v. Dietz opinions, supra, that the Court's views as to the validity of Rule X–16B–3 were intended to be, and in fact were, cast in the form of dictum. On the Petition for Rehearing the majority of the Court wrote, in part:

"The petition and brief demonstrate that the Securities and Exchange Commission understands,

---

8. "It is common experience that men conform their conduct to regulations by governmental authority so as to avoid the unpleasant legal consequences which failure to conform entails." Columbia Broadcasting System, Inc. v. United States, 1942, 316 U.S. 407, 418, 62 S.Ct. 1194, 1201, 86 L.Ed. 1563.

9. For example, the courts have not been uniform in their views as to the validity of the very Rule here involved. Com-

pare Greene v. Dietz, supra, 2 Cir., 247 F.2d 689, at pages 692, 695 (majority and concurring opinions); Perlman v. Timberlake, D.C.S.D.N.Y.1959, 172 F. Supp. 246, at page 258 with Greene v. Dietz, supra, 247 F.2d at 696–697 (dissenting opinion); Gruber v. Chesapeake & O. Ry. Co., D.C.N.D.Ohio 1957, 158 F.Supp. 593, at pages 606–607; Greene v. Dietz, supra, 143 F.Supp. at page 473.

without further clarification, the content of our opinion. We learn therefrom that it is re-evaluating its Rule X–16B–3. In the meantime, pending any modification of the Rule after such re-evaluation, it would seem that any reliance upon it by persons entitled to exercise stock purchase options under employee stock option plans substantially similar to that here in issue would be ill-advised."

The observation that reliance upon the Rule would be "ill-advised" apparently has been misconstrued by plaintiff as converting a dictum [10] into a holding and as constituting a caveat to investors situated as are these defendants. In that context, it is utterly inadmissible to argue that the words "ill-advised" are to be construed as tantamount to a shaking of the judicial index finger in the faces of the large body of holders of stock purchase options under restricted stock option plans.

■■■ On the basis of the plain language of § 23(a) and its legislative history we are satisfied that the Congress used the word "determined" in its ordinary and usual sense and that this statutory terminology does not include an expression of views short of a holding. The majority opinions cannot be distorted into a judicial determination of invalidity, nor successfully relied on to preclude the defendants from the protection afforded by § 23(a).

To bring themselves within the sheltering provision of § 23(a), the defendants must establish that they acted in good faith in conformity with a Rule of the Commission. That they complied with Rule X–16B–3 is conceded; we have only to determine, therefore, whether in so doing they acted in "good faith", within the intendment of the Act.

"Good faith" is not defined in either § 23(a) or elsewhere in the Act. In construing the Portal-to-Portal Act, 29 U.S.C.A. § 258, which also contained a "good faith" exculpatory provision some Courts adopted the "reasonably prudent man" standard [e. g., Kam Koon Wan v. E. E. Black, Ltd., 9 Cir., 188 F.2d 558, 562, certiorari denied, 1951, 342 U.S. 826, 72 S.Ct. 49, 96 L.Ed. 625].[11] The Court of Appeals for this Circuit, among others, rejected the view that " 'good faith' must meet an objective standard of reasonableness", stating:

"The 'good faith' of the statute requires, we think, only an honest intention to ascertain what the * * * Act requires and to act in accordance with it." Addison v. Huron Stevedoring Corp., 2 Cir., 204 F.2d 88, 93, certiorari denied, 1953, 346 U.S. 877, 74 S.Ct. 120, 98 L.Ed. 384.

■ Where a defendant in a suit under § 16(b) had knowledge of the dictum in Greene v. Dietz at or prior to the time he entered into the transaction upon which liability is sought to be predicated, such knowledge, if the correct standard be an objective one, could be urged to negate good faith reliance. A reasonably prudent man, it might be contended, faced with the choice between (i) relying on a duly promulgated rule [12]

---

10. Indeed, all Courts that have considered Greene v. Dietz, supra, have construed the views expressed in the majority opinions as to validity of the Rule, as dictum. See Perlman v. Timberlake, supra; Emerson Electric Mfg. Co. v. O'Neill, D.C.E.D.Mo.1958, 168 F.Supp. 804; Gruber v. Chesapeake & O. Ry. Co., supra.

11. See generally, Newman, Should Official Advice Be Reliable?—Proposals as to Estoppel and Related Doctrines in Administrative Law, 53 Colum.L.Rev. 374, 383–385 (1953).

12. Here the agency which promulgated the Rule has regulated the securities industry for upwards of a quarter of a century. Expertise in its field has been frequently, if not universally, ascribed to it. The Commission is charged with the enforcement and administration of the Securities Act of 1933, 15 U.S.C.A. § 77a et seq., the Securities Exchange Act of 1934, 15 U.S.C.A. § 78a et seq., the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79 et seq., the Trust Indenture Act of 1939, 15 U.S.C.A. § 77aaa et seq., the Investment Company Act of

which, though not judicially determined invalid was clouded by expression of serious doubts in a dictum by a Court whose decisions are entitled to the highest respect, or (ii) continuing his holdings though contra-indicated by his personal financial condition and the uncertainties of the market place, would choose the latter. Parenthetically, the reasonably prudent man might well plead that a proper regard for him should not place him in that dilemma.

Plaintiff here does not put in issue the defendants' denial that they did not have knowledge of Greene v. Dietz, supra, until after the last transaction complained of was consummated. She takes the position that they must conclusively be presumed to have had knowledge of said opinions after the case was decided on June 7, 1957.

It has frequently been stated that everyone is presumed to know the law. If we were to indulge in that presumption here the query might well be: "Just what was the law after the opinions in Greene v. Dietz, supra, were filed?" As already noted, it was not held in that case that Rule X-16B-3 was invalid. Two judges of the Court of Appeals expressed serious doubts as to the validity of the Rule, while the third member of the Court viewed that expression as without basis in the record. Hence, the most that can be presumed, if we are to indulge in presumptions at all, is that the defendants knew the law was unsettled.

■ The presumption of knowledge of the law is far removed from reality; [13]

on analysis it appears to be an inept expression of the general rule, founded on reasons of public policy, that ignorance of the law excuses no one. See Black v. Ward, 1873, 27 Mich. 191, 200; 20 Am. Jur., Evidence, § 211, at pp. 208–209; McKelvy, Evidence, § 81 at p. 169 (5th Ed. 1944); Thayer, Presumptions and the Law of Evidence, 3 Harv.L.Rev. 141, 165 (1889). By enacting a good faith exculpatory provision, however, the Congress, whose function it is to declare the public policy, declined to foist a liability upon that fiction, except, of course, where the acts or omissions constituting the claimed reliance occurred subsequent to a determination of invalidity. Our views in this regard are confirmed by the many authorities which have declined to charge individuals with bad faith on the sole basis of imputed or constructive knowledge of law or fact. Cf. United States v. Wyoming, 1947, 331 U.S. 440, 460, 67 S.Ct. 1319, 91 L.Ed. 1590; Guffey v. Smith, 1915, 237 U.S. 101, 118–119, 35 S.Ct. 526, 59 L.Ed. 856; Vesper v. Ashton, 1938, 233 Mo.App. 204, 118 S.W.2d 84, 89; Lockwood v. Title Ins. Co., 1911, 73 Misc. 296, 299, 130 N.Y.S. 824, 827; McKee v. Hughes, 1916, 133 Tenn. 455, 181 S.W.2d 930, L.R.A.1916D., 391; 31 C.J.S. Evidence § 132b(2); 22 C.J. Evidence § 85, at p. 150. Under all the circumstances here knowledge of the utterances in the opinions delivered in Greene v. Dietz, supra, may not be imputed to the individual defendants herein; certainly they may not be charged with knowledge of that which is not the fact. Emerson Electric Mfg. Co. v. O'Neill, supra. See note 9, supra. [14]

1940, 15 U.S.C.A. § 80a–1 et seq., the Investment Advisers Act of 1940, 15 U.S. C.A. § 80b–1 et seq. The rule under consideration is part of the overall legislative program to regulate the securities industry in the interests of the investing public. The courts, of course, are not precluded from reviewing any rule promulgated by this agency.

13. See Martindale v. Falkner, 2 C.B. 706, 719, 135 Eng.Rep. 1124, 1129 (1846) where Maule, J. stated: "There is no presumption in this country that every person knows the law: it would be con-

trary to common sense and reason if it were so." See also Regina v. Mayor of Tewkesbury, 3 Q.B. 629 (1868).

14. See also Lockheed Aircraft Corp. v. Rathman, D.C.S.D.Cal.1952, 106 F.Supp. 810, where, notwithstanding a prior case [Colby v. Klune, 2 Cir., 1949, 178 F.2d 872] which "cast a shadow on the validity of the rule [one other than X–16B–3]", [106 F.Supp. 813] the Court held that the rule there in issue was valid and that, in any event, the defendants therein were immune from liability for short-swing profits by virtue of their good faith

Viewing the instant case as one not involving knowledge, actual or otherwise, of the dictum in Greene v. Dietz, supra,[15] it is clear that the individual defendants' reliance upon Rule X–16B–3 was "in good faith" regardless of whether an objective or subjective standard is to be applied. The undisputed facts indicate that these defendants, insofar as the transactions in issue are concerned, relied both honestly and reasonably on Rule X–16B–3. Without recounting all the uncontroverted facts already noted, it should be observed (i) that the individual defendants meticulously complied with all the reporting requirements of the Act with respect to their interests in the stock of the corporation,[16] (ii) that they attended meetings at which they were advised by qualified personnel that the corporation's Stock Option Plan was within the exemption afforded by Rule X–16B–3, (iii) that they received letters and memoranda from eminent counsel containing the same advice,[17] and (iv) that only after they had been given such advice, did they enter into any of the transactions set forth in the complaint.

Under all the circumstances, the Court is of the view that by virtue of § 23(a) of the Act, the defendants are immune from the asserted liability, as a matter of law.

The individual defendants' motions for summary judgment are granted; plaintiff's motion for summary judgment is denied. The Clerk is directed to enter judgment dismissing the complaint upon the merits, and

It is so ordered.

reliance upon the rule within the meaning of § 23(a) of the Act. It is significant to note that there was no suggestion whatever in the Rathman case, that the earlier case of Colby v. Klune, supra, precluded good faith reliance on the rule as a matter of law.

15. Whether prior knowledge of the dictum in Greene v. Dietz, supra, would preclude good faith reliance on the Rule is a question which we do not reach and as to which we neither express nor intimate any view.

16. Counsel for the corporation are an established and eminent firm of lawyers of the very highest repute with recognized experience in corporate law. The defendants, who were entrusted by the Board of Directors with management of the affairs of the corporation, may safely be considered to be versed in matters of corporate management, their duties, responsibilities and liabilities. The existence of a "Section 16b Bar" even albeit to vindicate stockholders' rights is not a guarded secret. All the transactions complained of were reflected in the reports duly filed by the defendants. Unless the defendants can be said to have decided to (a) make the corporation a gift of the increment on the securities they traded, (b) permit prospective plaintiff's attorneys to share in their beneficence and (c) pay to the Treasury of the United States 25% of the "donated" increment, we must conclude that they honestly believed they were sheltered by the Rule.

17. See Greene v. Dietz, supra, 247 F.2d at pages 694–695; Emerson Electric Mfg. Co. v. O'Neill, supra.